**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KRISTI JORDAN, *individually and on behalf of all others similarly situated*,<br><br>   Plaintiff,<br><br>         v.<br><br>CRUNCH, LLC,<br><br>   Defendant. | Case No. 1:24-cv-7118 (AKH) |

**MEMORANDUM OF LAW IN SUPPORT OF CRUNCH, LLC'S MOTION TO**
**COMPEL ARBITRATION AND TO DISMISS OR STAY PROCEEDINGS**

By: */s/ Elana H. Somers*
Elana H. Somers
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
Telephone:  (212) 839-5300
Facsimile:  (212) 839-5599
Email: elana.somers@sidley.com

Ian M. Ross (*pro hac vice*)
SIDLEY AUSTIN LLP
1001 Brickell Bay Drive
Miami, FL 33131
Telephone:  (305) 391-5100
Facsimile:  (305) 391-5101
Email: iross@sidley.com

*Counsel for Defendant Crunch LLC*

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND .................................................................................................................... 2

DISCUSSION ........................................................................................................................ 4

I.    LEGAL STANDARD .................................................................................................... 4

II.   PLAINTIFF SHOULD BE COMPELLED TO ARBITRATE HER CLAIMS ON AN INDIVIDUAL BASIS ................................................................................................... 6

   A.   Plaintiff Agreed to Arbitrate Her Claims on an Individual Basis by Assenting to the Terms and Conditions of Her Membership ................................................................ 6

   B.   Plaintiff Agreed to Delegate Any Questions of Arbitrability to the Arbitrator .................. 9

      1.   Plaintiff cannot avoid her agreement to delegate issues of arbitrability by challenging the Arbitration Agreement. ................................................................................. 10

      2.   Plaintiff should not be permitted to avoid her agreement to delegate issues of arbitrability to the arbitrator by arguing that those issues are formation issues. .................. 12

III.  THIS ACTION SHOULD BE STAYED PENDING ARBITRATION ............................ 17

CONCLUSION .................................................................................................................... 17

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AF Trucking Inc. v. Bus. Fin. Servs., Inc.*,
No. 19-CV-8149 (CS), 2020 WL 2765678 (S.D.N.Y. May 28, 2020) ...................................11

*Alvarez v. Experian Info. Solutions, Inc.*,
661 F. Supp. 3d 18 (E.D.N.Y. 2023) ...............................................................................14, 15

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) ....................................................................................................................5

*Bakon v. Rushmore Serv. Ctr., LLC*,
No. 16-CV-6137, 2017 WL 2414639 (E.D.N.Y. June 2, 2017) ............................................15

*Berkson v. Gogo LLC*,
97 F. Supp. 3d 359 (E.D.N.Y. 2015) ........................................................................................6

*Buckeye Check Cashing, Inc. v. Cardegna*,
546 U.S. 440 (2006) ..................................................................................................................12

*Citizens Bank v. Alafabco, Inc.*,
539 U.S. 52 (2003) ......................................................................................................................5

*Coe v. Coca-Cola Company*,
702 F. Supp. 3d 140 (W.D.N.Y. 2023) ..................................................................................7, 9

*Collins & Aikman Prods. Co. v. Building Sys.*,
58 F.3d 16 (2d Cir. 1995) .........................................................................................................16

*ConocoPhillips Co. v. Graham*,
No. 01-11-00503-CV, 2012 WL 1059084 (Tex. App. Ct. Mar. 29, 2012) ............................15

*Contec Corp. v. Remote Solution, Co., Ltd.*,
398 F.3d 205 (2d Cir. 2005) ....................................................................................9, 10, 11, 12

*Continental U.K. Ltd. v. Anagel Confidence Compania Naviera, S.A.*,
658 F. Supp. 809 (S.D.N.Y. 1987) ..........................................................................................14

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985) ..............................................................................................................5, 11

*Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S.*,
9 F.3d 1060 (2d Cir. 1993) .......................................................................................................15

*Doctor's Assocs., Inc. v. Alemayehu*,
   934 F.3d 245 (2d Cir. 2019)...................................................................................5

*Falcon v. TelevisaUnivision Digital, Inc.*,
   No. 8:23-cv-02340-TPB-UAM, 2024 WL 1492831 (M.D. Fla. Mar. 29, 2024)....................16

*Fedotov v. Peter T. Roach & Assocs., P.C.*,
   No. 03-CV-8823 (CSH), 2006 WL 692002 (S.D.N.Y. Mar. 16, 2006).................................15

*Ferron v. Precision Directional Servs., Inc.*,
   No. 4:20-cv-3123, 2021 WL 6618657 (S.D. Tex. Sept. 21, 2021).........................................12

*Frost Nat. Bank v. L&F Distributors, Ltd.*,
   165 S.W.3d 310 (Tex. 2005)...................................................................................13

*Fteja v. Facebook, Inc.*,
   841 F.Supp.2d 829 (S.D.N.Y. 2012)........................................................................8

*Gonzalez v. Don King Prods.*,
   17 F.Supp.2d 313 (S.D.N.Y. 1998) .........................................................................13

*In re Google Digital Advertising Antitrust Litigation*,
   721 F. Supp. 3d 230 (S.D.N.Y. 2024)......................................................................2

*Grigson v. Creative Artists Agency LLC*
   210 F.3d 524 (5th Cir. 2000) .................................................................................15

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
   586 U.S. 63 (2019)....................................................................................5, 9, 10, 11

*JLR Global, LLC v. PayPal Holding Co.*,
   No. 4:22-CV-559, 2023 WL 2527158 (E.D. Tex. Mar. 15, 2023) ......................................6, 8

*Jody James Farms, JV v. Altman Group, Inc.*,
   547 S.W.3d 624 (Tex. 2018)................................................................................12, 15

*Kai Peng v. Uber Techs., Inc.*,
   237 F. Supp. 3d 36 (E.D.N.Y. 2017) ........................................................................6

*Lapina v. Men Women N.Y. Model Mgmt. Ltd.*,
   86 F. Supp. 3d 277 (S.D.N.Y. 2015).......................................................................11

*Laumann v National Hockey League*,
   989 F. Supp. 2d 329 (S.D.N.Y. 2013)......................................................................14

*Martinez v. Experian Info. Solutions, Inc.*,
   No. 3:24-CV-0744-X, 2024 WL 3906775 (N.D. Tex. Aug. 22, 2204) .................................8

*May v. Expedia, Inc.*,
    No. A-16-CV-1211-RP, 2018 WL 4343445 (W.D. Tex. July 19, 2018)...................................8

*Merrill Lynch Intl. Fin., Inc. v Donaldson*,
    27 Misc. 3d 391 (N.Y. Sup. Ct. 2010) ...................................................................16

*Meyers v. Uber Technologies, Inc.*,
    868 F.3d 66 (2d Cir. 2017)..................................................................................2

*Oppenheimer & Co. v. Neidhardt*,
    56 F.3d 352 (2d Cir. 1995)..................................................................................6

*Rent-A-Ctr., W., Inc. v. Jackson*,
    561 U.S. 63 (2010)........................................................................................9, 11

*Saizhang Guan v. Uber Techs., Inc.*,
    236 F. Supp. 3d 711 (E.D.N.Y. 2017) ..............................................................10

*Schnabel v. Trilegiant Corp.*,
    697 F.3d 110 114-16 (2d Cir. 2021) ....................................................................5

*Scott v. Grim*,
    No. 05-23-01250-CV, 2024 WL 4532963 (Tex. Ct. Ap. Oct. 21, 2024).................12

*Smith v. Spizzirri*,
    601 U.S. 472 (2024)....................................................................................5, 17

*Specht v. Netscape Commc'ns Corp.*,
    306 F.3d 17 (2d Cir. 2002).................................................................................6

*Taylor Morrison of Tex., Inc. v. Ha*,
    660 S.W.3d 529 (Tex. 2023)............................................................................16

*TotalEnergies E&P USA, Inc. v. MP Gulf of Mexico, LLC*,
    667 S.W.3d 694 (Tex. 2023)..............................................................................9

*Ward v. American Airlines, Inc.*,
    498 F. Supp. 3d 909 (N.D. Tex. 2020) .............................................................15

*In re Weekley Homes, L.P.*,
    180 S.W.3d 127 (Tex. 2005).............................................................................15

*Whitt v. Prosper Funding LLC*,
    No. 1:15–cv–136–GHW, 2015 WL 4254062 (S.D.N.Y. July 14, 2015)..................7

*Wu v. Uber Techs., Inc.*,
    2024 WL 4874383, 2024 NY Slip .............................................................6, 7, 8, 11

**Statutes**

9 U.S.C. § 2 .................................................................................................................4, 5

9 U.S.C. § 3 ...................................................................................................................2, 17

9 U.S.C. § 4 ...................................................................................................................2, 10

Federal Rule of Civil Procedure 12(b)(3) ....................................................................2

Federal Rule of Civil Procedure 12(b)(6) ....................................................................2

Video Privacy Protection Act .............................................................................1, 2, 10, 16

**Other Authorities**

American Arbitration Association Commercial Arbitration Rules .......................................4, 9, 10

Defendant Crunch, LLC ("Crunch") respectfully submits this memorandum of law in support of its motion to compel arbitration and stay this proceeding pending resolution of the arbitration.

## PRELIMINARY STATEMENT

Plaintiff Kristi Jordan claims that Crunch allegedly violated the Video Privacy Protection Act ("VPPA") after Plaintiff "purchased a monthly subscription to Defendant's Website which provides access to prerecorded video materials." First Amended Complaint ("Complaint" or "FAC"), ECF No. 5, ¶ 9. According to Plaintiff, after she watched prerecorded videos on Crunch's website, Crunch allegedly disclosed her "personally identifying video viewing information to Meta," in violation of the VPPA. *Id.* at ¶¶ 2, 12-13. But Plaintiff's dispute does not belong in this Court because when Plaintiff started her Crunch membership, she agreed resolve ***any*** disputes with Crunch by individual, binding arbitration. She also agreed that any questions relating to the scope or validity of her agreement arbitrate would be decided by an arbitrator, not the Court. Thus, the only matter for this Court to decide under Second Circuit law is whether there is a contract containing an arbitration provision (which there clearly is).

As set forth below, when Plaintiff signed up for her membership on the Crunch website, www.crunch.com (the "Website"), she agreed to the "Membership Terms & Conditions" displayed clearly and conspicuously on the Website:



1

*See* Declaration of Chad Waetzig ("Waetzig Decl."), attached as **Exhibit 1**, at ¶¶ 6-7. These Membership Terms & Conditions—which contain an arbitration agreement—were hyperlinked on the webpage, and Plaintiff clicked on the button, "I agree to the Membership Terms & Conditions." *Id.* at ¶¶ 8-9. In these Membership Terms & Conditions, the parties agreed to arbitrate their disputes, and also agreed that any disagreement over the scope or interpretation of their arbitration agreement had to be resolved by the arbitrator. *See* Ex. 1 at Exhibit B ("Exhibit B") at pp. 4, 9-10.

This form of online "clickwrap" agreement is clearly enforceable: The Second Circuit has found that "[c]ourts routinely uphold clickwrap agreements for the principal reason that the user has affirmatively assented to the terms of agreement by clicking 'I agree.'" *Meyers v. Uber Technologies, Inc.*, 868 F.3d 66, 75 (2d Cir. 2017). Accordingly, pursuant to Federal Rule of Civil Procedure 12[1] and Sections 3 and 4 of the Federal Arbitration Act, *see* 9 U.S.C. §§ 3, 4, Crunch respectfully requests that the Court compel arbitration of this matter and stay this action pending the arbitration.

## **BACKGROUND**[2]

Plaintiff filed her FAC on September 20, 2024, alleging violations of the VPPA on behalf of herself and other putative class members. FAC ¶ 1. Plaintiff claims that her personal viewing history of Crunch's video was allegedly disclosed by Crunch through "a snippet of programming code called the 'Meta Pixel,'" which Plaintiff claims was used by Crunch on its Crunch Plus website. *Id.* at ¶ 2. Plaintiff claims that she never consented to this disclosure. *Id.* at ¶ 4.

However, Plaintiff's claims against Crunch are subject to individual arbitration. On or

---

[1] *See In re Google Digital Advertising Antitrust Litigation*, 721 F. Supp. 3d 230, 252 n. 6 (S.D.N.Y. 2024) (noting that New York district courts may consider the enforcement of an arbitration clause under a Rule 12(b)(3) venue motion or Rule 12(b)(6).

[2] For the purposes of this motion, Crunch accepts Plaintiff's factual allegations as true. Crunch reserves and does not waive its right to advance additional defenses to Plaintiff's claims and allegations should the Motion not be granted, and reserves and does not waive its right to challenge the truth of the facts as alleged by Plaintiff.

about December 27, 2023, Plaintiff signed up for a membership with Crunch on Crunch's Website. Waetzig Decl. ¶¶ 6-7. She provided her name, address, cellphone number, and other information as part of completing her online membership agreement. *Id.* When signing up, Plaintiff (like any new member) was required to click and agree to the following language before a membership is created:



*See id.*; *see also* Ex. 1 at Exhibit A. As reflected in the screenshot above, the phrase "I agree to the Membership Terms & Conditions" appeared in bold when Plaintiff signed up on the Website. "Membership Terms & Conditions" appeared in blue to show that it was a hyperlinked term where, by clicking anywhere on that term, Plaintiff was able to review the terms and conditions of her membership before agreeing to that membership. *See id.* When Plaintiff added a "Crunch Plus" subscription to her Crunch membership, she used that her existing membership to obtain a lower subscription price (which is available only for existing Crunch members) for the additional Crunch Plus subscription on or about September 11, 2024. Waetzig Decl. ¶ 4.

The Terms & Conditions Plaintiff agreed to (the "Terms") contains disclosures, using capitalized and bolded letters in separately identified paragraphs, that Plaintiff is agreeing to individual arbitration (the "Arbitration Agreement"). *See* Exhibit B at 4, 9-10. First, the Terms state in capitalized letters: "IN THE EVENT OF ANY DISPUTE BETWEEN YOU AND CRFH ('CRFH' AS USED IN THIS PROVISION MEANS CR FITNESS HOLDINGS, LLC, CRUNCH FITNESS, ITS AFFILIATES, AND THEIR RESPECTIVE OFFICERS, DIRECTORS,

EMPLOYEES AND AGENTS), YOU AND CRFH CONSENT TO ARBITRATE THAT DISPUTE BEFORE A SINGLE ARBITRATOR UNDER THE THEN CURRENT RULES OF THE AMERICAN ARBITRATION ASSOCIATION." *Id.* at 4. Second, the Terms later include two additional provisions further specifying that this agreement to arbitrate includes (1) "a dispute, claim, or controversy between you and Crunch (or its affiliates) relating to the rate reservation promotion, your agreement to receive SMS text alerts from Crunch, these Terms & Conditions, or the validity or enforceability of this Arbitration Agreement, whether those claims arise in contract, law, tort, or equity," and (2) ***any other*** complaint that cannot be informally resolved. *Id.* at 9-10 (*see* "Dispute Resolution" paragraph).[3]

In her Arbitration Agreement, Plaintiff also agreed to delegate to an arbitrator any dispute concerning the "validity" or "[]enforce[ability]" of the Arbitration Agreement. *Id.* at 4, 9-10. The parties also agreed to use the rules of the American Arbitration Association ("AAA"), *see id.,* which similarly delegate questions of arbitrability to the arbitrator. *See, e.g.,* Rule 7(a), AAA Commercial Arbitration Rules ("The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."); Rule 14(a), AAA Consumer Arbitration Rules (same). Finally, Plaintiff's agreements included a capitalized jury trial waiver and class waiver. Exhibit B at 9-10.

## DISCUSSION

## I.     LEGAL STANDARD

Section 2 of the Federal Arbitration Act ("FAA") provides that an arbitration agreement

---

[3] Although Plaintiff alleges that she never consented to any disclosure of her personal data, her agreement with Crunch undermines that allegation, as Plaintiff also agreed to processing of her personal data in accordance with Crunch's policies. *See* Exhibit B at p. 13 ("[a]ll processing of your personal data will be in accordance with our Privacy, CCTV & Cookie policy").

provision in any contract involved in interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 336 (2011). The FAA applies to any arbitration agreement that is "written" and that is in a contract evidencing "a transaction involving commerce." 9 U.S.C. § 2; *see Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) ("[T]he term 'involving commerce' in the FAA [is] the functional equivalent of the more familiar term 'affecting commerce'–words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power.").[4] Once a court determines that the parties to a litigation agreed to arbitrate, the FAA gives the court no discretion; rather, it must compel the parties to arbitrate and stay the action pending the outcome. *See Smith v. Spizzirri*, 601 U.S. 472, 475-76 (2024); *see also Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

While under the FAA, courts ordinarily determine whether a particular dispute falls within the scope of an arbitration provision, "parties may agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 67-68 (2019) (cleaned up). Where an arbitration agreement "delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Id.* at 69; *see also Doctor's Assocs., Inc. v. Alemayehu*, 934 F.3d 245, 251 (2d Cir. 2019) ("[W]e first look to see if an agreement to arbitrate was formed, then determine if it contains a delegation clause."). In deciding a motion to compel arbitration, a court should consider

---

[4] Both criteria are met here: (i) the parties' agreement are in writing and (ii) Plaintiff's membership in a national brand of fitness clubs and online services, including her use of the Website and agreement to receive calls and emails (which plainly involve means of interstate commerce), implicate and affect commerce. *See, e.g., Schnabel v. Trilegiant Corp.*, 697 F.3d 110 114-16 (2d Cir. 2021) (applying FAA to membership in online programs); *see also* Exhibit B at 4 ("YOU AND CRFH ALSO AGREE THAT THE FEDERAL ARBITRATION ACT GOVERNS THE ARBITRABILITY OF ALL DISPUTES BETWEEN YOU AND CRFH.") (emphasis in original).

all evidence "submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, and must draw all reasonable inferences in favor of the non-moving party." *Id*. In order to defeat arbitration, "it is not sufficient for the party opposing arbitration to utter general denials of the facts on which the right to arbitration depends." *Oppenheimer & Co. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995).

## II.    PLAINTIFF SHOULD BE COMPELLED TO ARBITRATE HER CLAIMS ON AN INDIVIDUAL BASIS

Here, the record demonstrates that Plaintiff formed a contract in which she agreed to arbitrate disputes with Crunch, and that the parties agreed to delegate any issues of arbitrability regarding the Arbitration Agreement to the arbitrator—thus, Plaintiff cannot raise the litigate whether her dispute is within the scope of her Arbitration Agreement at this stage. *See Kai Peng v. Uber Techs., Inc.*, 237 F. Supp. 3d 36, 52-53, 60 (E.D.N.Y. 2017). Accordingly, arbitration should be compelled.

### A.    Plaintiff Agreed to Arbitrate Her Claims on an Individual Basis by Assenting to the Terms and Conditions of Her Membership

"[A] court should generally apply state-law principles to the issue of contract formation." *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 29 (2d Cir. 2002); *see also Meyer*, 868 F.3d at 74 (same). Under New York law, to form a contract "there must be '[m]utual manifestation of assent, whether by  written or spoken word or by contract." *Id.* (quoting *Specht*, 306 F.3d at 29.[5] Last week, the New York Court of Appeals squarely held as a matter of New York law that a "clickwrap process . . . satisf[ies] the requirements for formation of an agreement to arbitrate." *Wu*

---

[5] Plaintiff's membership agreement includes a choice of law provision for Texas law, but  courts will not "[r]ely[] on [a contract's choice-of-law] provision before a contract has been found to have been accepted by the parties as binding." *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 387 (E.D.N.Y. 2015). This brief includes discussions of both New York and Texas law, as Texas law is in accord on all points relevant to the issues set forth herein. *See, e.g., JLR Global, LLC v. PayPal Holding Co.*, No. 4:22-CV-559, 2023 WL 2527158, at *2 (E.D. Tex. Mar. 15, 2023) (enforcing "clickwrap" agreement).

*v. Uber Techs., Inc.*, 2024 WL 4874383, 2024 NY Slip Ip. 5869 (N.Y. Nov. 25, 2024); *see also id.* at *9 ("Uber's clickwrap process satisfied the contract-formation requirements of offer and acceptance. Although plaintiff's accusations of misrepresentations or unconscionable conduct may raise questions as to the enforceability of the provision of the arbitration agreement purporting to cover preexisting claims, the Supreme Court has made clear that those are not formation questions."); *id.* at *1 ("We conclude that the 'clickwrap' process Uber used to solicit plaintiff's assent resulted in the formation of an agreement to arbitrate.").  The Second Circuit had correctly predicted New York law on that score, observing that manifestation of assent can be demonstrated by an acceptance "click" on a website: "'Courts around the country have recognized that [an] electronic 'click' can suffice to signify the acceptance of a contract,' '. . . as long as the layout and language of the site give the user reasonable notice that a click will manifest assent to an agreement.'" *Meyer*, 868 F.3d at 75 (citation omitted)).

Courts reviewing website-based agreements have distinguished them by "the manner in which the user manifests assent—namely, 'clickwrap' (or 'click-through') agreements, which require users to click an 'I agree' box after being presented with a list of terms and conditions of use, or 'browsewrap' agreements, which generally post terms and conditions on a website via a hyperlink at the bottom of the screen. *Meyer*, 868 F.3d at 75. The distinguishing feature of a clickwrap agreement is "[a]n electronic 'click,'" which "can signify assent [to a web-based agreement, as required for the agreement to be an enforceable contract under New York law], so long as the interface gives the user reasonable notice that the 'click' will manifest assent to an agreement." *Coe v. Coca-Cola Company*, 702 F. Supp. 3d 140, 156-57 (W.D.N.Y. 2023). Such agreements are "routinely upheld." *Meyer*, 868 F.3d at 75 (citing cases); *see, e.g., Coe*, 702 F. Supp. 3d at 156-57 (enforcing clickwrap agreement); *Whitt v. Prosper Funding LLC*, No. 1:15–

cv–136–GHW, 2015 WL 4254062, at *4 (S.D.N.Y. July 14, 2015) (same); *Fteja v. Facebook, Inc.*, 841 F.Supp.2d 829, 837 (S.D.N.Y. 2012) (collecting cases). [6]

Here, Plaintiff agreed to an enforceable clickwrap agreement when she signed up for her membership on the Website. As demonstrated above, *see supra* at p.4 (citing Ex. 1 at Exhibit A), Plaintiff assented to the Membership Terms & Conditions containing her Arbitration Agreement by clicking next to the phrase "I agree to the Membership Terms & Conditions," which appeared in bold and with a prominent hyperlink that allowed her to review the terms of her agreement. *Id.* The term "Membership Terms & Conditions" appeared in blue to show that it was a hyperlinked term where, by clicking anywhere on that term, Plaintiff was able to review the terms and conditions of her membership before agreeing to that membership, which required an electronic "click" to manifest her assent before completing her purchase. *Id.*

The Court of Appeals just held in *Wu* that a materially indistinguishable click wrap agreement is enforceable. *See* 2024 WL 4874383, at *2 ("The uncluttered screen encouraged plaintiff to review the new terms of use and included a hyperlink to those terms indicated by underlined and blue text. Toward the bottom of the screen was a checkbox and, to its immediate right, bolded text stating: 'By checking the box, I have reviewed and agreed to the Terms of Use and acknowledge the Privacy Notice.' Immediately beneath this was a large black button labeled 'Confirm.' It is undisputed that plaintiff checked the box and clicked the 'Confirm' button."). Even prior to *Wu*, the Second Circuit and courts within this Circuit had consistently held the same way. *See*, *e.g.*, *Meyer*, 868 F.3d at 78 (holding a clickwrap agreement with a hyperlink enforceable after

---

[6] "Courts within Texas routinely enforce agreements that are acknowledged in this [clickwrap assent] manner." *Martinez v. Experian Info. Solutions, Inc.*, No. 3:24-CV-0744-X, 2024 WL 3906775, at *2 and n.18 (N.D. Tex. Aug. 22, 2204); *see also JLR Global LLC*, 2023 WL 2527158, at *4 ("In clickwrap agreements, an affirmative click is deemed an actual signature that binds the parties."); *May v. Expedia, Inc.*, No. A-16-CV-1211-RP, 2018 WL 4343445, at *3 (W.D. Tex. July 19, 2018) (same).

noting that internet users know "that text that is highlighted in blue and underlined is hyperlinked to another webpage where additional information will be found"); *Coe*, 702 F. Supp. 3d at 156-57 (similar).[7] Accordingly, the Arbitration Agreement Plaintiff agreed to when she agreed to her membership on Crunch's website is enforceable.

### B.    Plaintiff Agreed to Delegate Any Questions of Arbitrability to the Arbitrator

The Supreme Court has held that "parties may agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Henry Schein, Inc.*, 586 U.S. at 67-68 (cleaned up). Where an arbitration agreement "delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Id*. at 69; *accord Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010). Likewise, where, as here, the parties expressly incorporate the rules of an arbitration administrator "that empower an arbitrator to decide issues of arbitrability, the incorporate serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." *Contec Corp. v. Remote Solution, Co., Ltd.*, 398 F.3d 205, 208, 210-11 (2d Cir. 2005) (enforcing AAA Rules' delegation provision given that the contract containing the arbitration clause incorporated those rules by reference).[8]

Here, Plaintiff agreed to delegate any issue relating to the arbitrability of her dispute to an arbitrator. *See supra* at pp. 3-4; *see also* Exhibit B at 4, 9-10 (delegating any questions of arbitrability to the arbitrator). Plaintiff also agreed to use the rules of the AAA, *see id.*, which similarly  delegate questions of scope of arbitrability to the arbitrator. *See, e.g.,* Rule 7(a), AAA

---

[7] The Second Circuit in *Meyer* rejected the argument that "the location of the arbitration clause within the Terms and Conditions" rendered it unenforceable, finding that, "[a]lthough the contract terms are lengthy and must be reached by a hyperlink, the instructions are clear and reasonably conspicuous." 868 F.3d at 79.
[8] *See also TotalEnergies E&P USA, Inc. v. MP Gulf of Mexico, LLC*, 667 S.W.3d 694, 708 (Tex. 2023) ("We agree with the vast majority of courts that, as a general rule, an agreement to arbitrate in accordance with the AAA or similar rules constitutes a clear and unmistakable agreement that the arbitrator must decide whether the parties' disputes must be resolved through arbitration.").

Commercial Arbitration Rules ("The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."); Rule 14(a), AAA Consumer Arbitration Rules (same). Accordingly, any arguments raised by Plaintiff with respect to whether her claims are covered by her Arbitration Agreement must be arbitrated. *Henry Schein, Inc.*, 586 U.S. at 69; *Contec Corp.*, 398 F.3d at 211 (same).

> 1.    **Plaintiff cannot avoid her agreement to delegate issues of arbitrability by challenging the Arbitration Agreement.**

In the parties' meet and confer, Plaintiff stated that she intended to oppose Crunch's Motion because, she claimed, the Arbitration Agreement (1) should be voided for indefiniteness because it does not identify who the counterparty is, (2) does not inure for the benefit of Crunch, and (3) does not cover her VPPA claim. But each of these arguments go to questions of arbitrability that Plaintiff ***must present to the arbitrator***. Not only did Plaintiff expressly delegate any questions regarding "the validity or enforceability of this Arbitration Agreement" to the arbitrator and agree that the AAA's rules (which also provide for delegation of arbitrability questions) shall apply, Exhibit B at 4, 9-10, but this delegation language expressly covers disputes with "***Crunch (or its affiliates).***" *Id.* at 9 (emphasis added); *see also id.* at 4 (agreeing that the AAA's rules apply to disputes between Plaintiff and "CR FITNESS HOLDINGS, LLC, CRUNCH FITNESS, [OR] ITS AFFILIATES") (emphasis in original).

"[A]s a signatory to a contract containing an arbitration clause and incorporating by reference the AAA Rules, [Plaintiff] cannot now disown its agreed-to obligation to arbitrate all disputes, including the question of arbitrability." *Contec Corp.*, 398 F.3d at 209. The FAA, not state law, "governs the analysis of whether questions of arbitrability have been delegated." *Saizhang Guan v. Uber Techs., Inc.*, 236 F. Supp. 3d 711, 727 (E.D.N.Y. 2017) (citing *Rent-A-*

*Center, W.*, 561 U.S. at 70). And Section 4 of the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Byrd*, 470 U.S. at 218, 105 (emphasis in original); *see also Wu*, 2024 WL 4874383, at *1 ("Moreover, a key term of that agreement expressly delegates to an arbitrator the exclusive authority to resolve all disputes as to the applicability and enforceability of the agreement. Because plaintiff has not established that the delegation provision is invalid, her challenges to the portions of the agreement that purportedly apply to pending legal claims were properly directed to the arbitrator.").

Thus, because Plaintiff has expressly delegated all questions regarding arbitrability to the arbitration, the Court should decline to consider Plaintiff's arguments regarding indefiniteness or voidness, scope, and whether the Arbitration Agreement benefits Crunch. *See Rent-A-Center, W.*, 561 U.S. at 63, 69-70 (delegation clause controlled voidness challenges to arbitration agreement); *Henry Schein, Inc.*, 586 U.S. at 69 (arguments regarding whether claims are covered by an arbitration clause are delegated to arbitrator); *AF Trucking Inc. v. Bus. Fin. Servs., Inc.*, No. 19-CV-8149 (CS), 2020 WL 2765678, at *5 (S.D.N.Y. May 28, 2020) (voidness and scope challenge subject to delegation clause); *Contec Corp.*, 398 F.3d at 209 ("[N]either we nor the district court must reach the question whether [signatory to the arbitration agreement] is estopped from avoiding arbitration with [non-signatory] because, under the 1999 Agreement, the circumstances indicate that arbitration of the issue of arbitrability is appropriate."); *Lapina v. Men Women N.Y. Model Mgmt. Ltd.*, 86 F. Supp. 3d 277, 284 (S.D.N.Y. 2015) ("[W]here a party seeking to avoid arbitration is a signatory to an arbitration agreement which incorporates rules that delegate arbitrability questions to the arbitrator, a court need not reach the issue of whether a non-signatory may compel arbitration, because that is an issue properly resolved by the arbitrator.").

      2.      **Plaintiff should not be permitted to avoid her agreement to delegate issues of arbitrability to the arbitrator by arguing that those issues are formation issues.**

Plaintiff may try to argue that issues relating to whether the agreement inures to the benefit of Crunch or is too indefinite are "formation" and not arbitrability issues, but Supreme Court and Second Circuit precedents foreclose those arguments. Under the FAA, the Second Circuit has held that a party's right to enforce an arbitration agreement, where it is challenged as a nonsignatory or otherwise, "is a matter of the Agreement's continued existence, validity, and scope, and is therefore subject to arbitration" where there is a delegation of arbitrability issues. *Contec Corp.*, 398 F.3d at 209. Consistent with the cases cited *supra* at 12-13 (quoting *Rent-A-Center W.*, *Henry Schein*, and *AF Trucking*), the same is true for validity or voidness challenges. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 449 (2006) ("the issue of the contract's validity is considered by the arbitrator in the first instance"). Thus, Plaintiff cannot attempt to recast its arguments, which are subject to delegation to the arbitrator, as challenges to the formation of the Arbitration Agreement, which is the lone issue before this Court, *supra* § II.A.[9]

Regardless, because Plaintiff has suggested that she intends to raise these arbitrability issues with the Court, Crunch briefly responds (without waiver of the parties' delegation

---

[9] Although the Texas Supreme Court has said that it views delegation clauses differently "when a dispute arises between a party to the arbitration agreement and a non-signatory," *Jody James Farms, JV v. Altman Group, Inc.*, 547 S.W.3d 624, 632 (Tex. 2018), that analysis has no relevance here for at least four reasons. First, the FAA, not state law, governs issues of arbitrability. *See supra* at 11 (citing cases). Second, the Court should not apply the Texas choice of law provision in the Terms when considering whether a contract has been formed. *See supra* at 6 n.4 (citing cases). Third, the parties specifically agreed that, as to the Arbitration Agreement, the FAA (not Texas law) would govern ***all*** issues of arbitrability. Exhibit B at 4, 9. And fourth, courts in Texas have consistently distinguished this holding as involving a fact pattern where the arbitration agreement and delegation language are specifically restricted to the parties. Courts in Texas have said the holding does not apply where, as here, a non-signatory is trying to compel a signatory to arbitration (Plaintiff cannot claim that she is not a signatory), and Arbitration Agreement (and delegation language) are already extended to nonsignatories. *Ferron v. Precision Directional Servs., Inc.*, No. 4:20-cv-3123, 2021 WL 6618657, at *7 (S.D. Tex. Sept. 21, 2021) (*Jody James Farms* does not apply where "the arbitration agreement "clearly and unmistakably creates third-party beneficiaries," or "a non-signatory here is attempting to compel a signatory to arbitration"); *Scott v. Grim*, No. 05-23-01250-CV, 2024 WL 4532963, at *3 (Tex. Ct. Ap. Oct. 21, 2024) (concerns in *Jody James Farms* "do not exist when it is the non-signatory who is attempting to enforce the arbitration provision").

agreement) to make clear that Plaintiff's arguments are meritless, and that Crunch is entitled to enforce the Arbitration Agreement. The Arbitration Agreement broadly refers to disputes not only the franchisee owning the club that Plaintiff joined (CR Fitness Holdings, LLC), but also Crunch and any **affiliates**. *See* Exhibit B at 4, 9. And each of the subsequent references to this Arbitration Agreement in the Terms likewise referenced Plaintiff's agreement to arbitrate disputes not only just with her local club, but **Crunch** (and its affiliates) generally. *See id.* at 9-10 (referencing disputes "between ***you and Crunch (or its affiliates)***") (emphasis added); *id.* (referencing "Crunch Fitness").[10] The challenges Plaintiff has raised regarding this language—that it is allegedly "indefinite" or vague, and that it is not for the benefit of Crunch—are both specious.

First, the Terms themselves expressly define the local "Club" referenced in the Terms, stating "THE CLUB IS THE OWNER OF THIS FACILITY" and noting that it "HAS BEEN LICENSED BY AN AFFILIATE OF CRUNCH, LLC TO USE THE CRUNCH FITNESS MARKS IN CONNECTION WITH ITS OPERATION." Exhibit B at 12 (emphasis in original). But as Plaintiff fully understood, her membership also broadly provides her benefits across the Crunch brand, including the use of any Crunch clubs and classes. *See* Waetzig Decl. at ¶¶ 4-6. As part of these Terms, as well as the fact that Plaintiff is receiving benefits across the Crunch brand (and hundreds of clubs), Crunch is specifically referenced in several provisions in the Terms, including the Arbitration Agreement.[11] On this basis alone, Crunch is entitled to enforce the

---

[10] The clickwrap agreement and Terms both make clear that Plaintiff is agreeing to the Terms of the local club she is joined. In the clickwrap agreement, it expressly states, "Click on Membership Terms & Conditions above for applicable charge date ***or contact your club***." Waetzig Decl. at Ex. 1 (emphasis added).

[11] Any attempt to void the contract for "indefiniteness" is also contrary to the general principle that courts should be reluctant to strike down contracts for indefiniteness—especially where the plaintiff is not challenging that a contract was agreed to—and that should attempt to ascertain the intent of the parties and fill in missing terms if possible. *Gonzalez v. Don King Prods.,* 17 F.Supp.2d 313, 314-15 (S.D.N.Y. 1998) (holding that refusing to enforce a contract as indefinite and meaningless "'is at best a last resort'") (quoting *166 Mamaroneck Ave. Corp. v. 151 E. Post Rd. Corp.*, 78 N.Y.2d 88, 91, 571 N.Y.S.2d 686, 688 (1991); *see Frost Nat. Bank v. L&F Distributors, Ltd.*, 165 S.W.3d 310, 311-12 (Tex. 2005) (Texas courts should "construe contracts from a utilitarian standpoint bearing in mind the

Arbitration Agreement. *See Alvarez v. Experian Info. Solutions, Inc.*, 661 F. Supp. 3d 18, 27 (E.D.N.Y. 2023) (defendant can enforce arbitration agreement because it is referenced in the arbitration agreement).

Second, settled general principles of contract and agency law make clear that Crunch is entitled to enforce the Arbitration Agreement. The Terms repeatedly reference Crunch and affiliates, explaining, for example, that Crunch and its affiliates may "contact you via telephone email, text message, or other means," and that Plaintiff is joining a local club that "HAS BEEN LICENSED BY AN BY AN AFFILIATE OF CRUNCH, LLC TO USE THE CRUNCH FITNESS MARKS IN CONNECTION WITH ITS OPERATION." Exhibit B at 8, 12. The references to Crunch and "affiliates" in the Arbitration Agreement clearly demonstrate the parties' intent for their agreement to include Crunch, and Plaintiff can hardly claim otherwise, given that she used Crunch's Website to sign up for her membership with the understanding that she was joining the Crunch brand and could use its facilities and services. *See Continental U.K. Ltd. v. Anagel Confidence Compania Naviera, S.A.*, 658 F. Supp. 809, 813 (S.D.N.Y. 1987) (if a "party's arbitration clause is expressly incorporated into a bill of lading, nonsignatories . . . who are linked to that bill through general principles of contract law or agency law may be bound"); *Laumann v National Hockey League*, 989 F. Supp. 2d 329, 336 (S.D.N.Y. 2013) (when agency exist, such as when the non-signatory is a parent company or corporate affiliate of a signatory, the non-signatory can be bound to arbitrate where "the issues the non-signatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed") (citation omitted).

Based on the express references to Crunch in the Terms, Crunch similarly is entitled to enforce the Arbitration Agreement as a third-party beneficiary of the Arbitration Agreement.

---

particular business activity sought to be served and will avoid when possible and proper a construction which is unreasonable, inequitable, and oppressive.") (citations and quotations omitted).

Courts have consistently allowed third parties to enforce arbitration agreements where they are either expressly or impliedly referenced in an arbitration agreement or broader set of terms and conditions. *See Bakon v. Rushmore Serv. Ctr., LLC*, No. 16-CV-6137, 2017 WL 2414639, at *3 (E.D.N.Y. June 2, 2017) (affiliate to signatory could enforce arbitration agreement as third-party beneficiary where agreement referenced "affiliates" ); *Fedotov v. Peter T. Roach & Assocs., P.C.*, No. 03-CV-8823 (CSH), 2006 WL 692002, at *2 (S.D.N.Y. Mar. 16, 2006) (language in arbitration agreement was broad enough to cover nonsignatories as third-party beneficiaries). Here, the Arbitration Agreement expressly names Crunch and Plaintiff agreed to it after using Crunch's website as part of an attempt to form a relationship with Crunch and its clubs. *See Alvarez*, 661 F. Supp. 3d at 27 ("Even if Experian could not enforce the Arbitration Agreement as a party, under a third-party beneficiary theory, Experian may do so.").[12]

Crunch is also entitled to enforce the Arbitration Agreement under principles of equitable estoppel. Equitable estoppel binds a plaintiff to an arbitration agreement where, as here, Plaintiff has obtained the benefit of her membership both her local club and Crunch but seeks to avoid the terms of those agreements. *See Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S.,* 9 F.3d 1060, 1064 (2d Cir. 1993) (plaintiff was estopped from accepting benefits of an agreement but then denying applicability of the arbitration clause).[13] Specifically, Plaintiff used her existing

---

[12] *See ConocoPhillips Co. v. Graham*, No. 01-11-00503-CV, 2012 WL 1059084, at *6 (Tex. App. Ct. Mar. 29, 2012) (third-party beneficiary was entitled to enforce arbitration agreement, finding that a "third-party beneficiary may be identified in the agreement by class or category or persons, all of whom may not be known to the contracting parties at the time of execution"); *Ward v. American Airlines, Inc*., 498 F. Supp. 3d 909, 921-22 (N.D. Tex. 2020) (holding that American Airlines was an intended third-party beneficiary where "travel suppliers" were referenced in the arbitration agreement); *see also Jody James Farms*, 547 S.W.3d at 649 (non-signatories can compel arbitration when they have a close relationship with a signatory and the claims are intertwined with the underlying contract).

[13] *See also Grigson v. Creative Artists Agency LLC* 210 F.3d 524, 527 (5th Cir. 2000) ("[A]pplication of equitable estoppel is warranted when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract.") (citation omitted); *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 134 (Tex. 2005) (where "Von Bargen deliberately sought substantial and direct benefits from the contract, and Weekley agreed to comply, equity prevents her from avoiding the arbitration clause that was part of that agreement").

Crunch membership to obtain a lower subscription price to the add-on Crunch Plus service—which is provided only by Crunch, not its franchisee—and thus should not be permitted to avoid that very same agreement now that she is challenging calls allegedly made to her. *See id.* Basic principles of estoppel and fairness dictate that Crunch is entitled to enforce the Arbitration Agreement. *Id.*; *see also Merrill Lynch Intl. Fin., Inc. v Donaldson*, 27 Misc. 3d 391, 396 (N.Y. Sup. Ct. 2010) ("[C]onsent to arbitration has been inferred where the nature of the relationship between a signatory and nonsignatory indicates that the agreement to arbitrate should be extended in the interest of fairness.").[14]

Finally, Plaintiff's intent to argue that her VPPA claims are outside of that scope of the Arbitration Agreement is not only improper based on the parties' agreement to delegate that issue to the arbitrator, but is also baseless. District courts have referred other VPPA claims to arbitration. *See, e.g., Falcon v. TelevisaUnivision Digital, Inc.*, No. 8:23-cv-02340-TPB-UAM, 2024 WL 1492831, at *4 (M.D. Fla. Mar. 29, 2024). And the Supreme Court has held that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Mercury Constr. Corp.*, 460 U.S. at 24-25. Arbitration agreements that contain causes that submit to arbitration "any" or "all" claims arising out of or relating to agreements are the "paradigm of a broad clause," and claims brought are "presumptively arbitrable." *Collins & Aikman Prods. Co. v. Building Sys.*, 58 F.3d 16, 20 (2d Cir. 1995). Here, the Arbitration Agreement contains exactly the type of broad language that courts have consistently interpreted to find that disputes between parties are presumptively arbitrable, covering ***any*** dispute with Crunch or its affiliates. *See* Exhibit B at 4, 9-10. And Plaintiff agreed that she would arbitrate ***any*** other complaint or dispute that the parties could not informally resolve. Exhibit B at 9-10. When an arbitration clause is broad, as it

---

[14] *See Taylor Morrison of Tex., Inc. v. Ha*, 660 S.W.3d 529, 533 (Tex. 2023) (equitable estoppel applies where the plaintiff has obtained substantial benefits from the contract containing the arbitration clause).

is here, the Supreme Court has held that "in the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *AT & T Techs., Inc*, 475 U.S. at 650 (cleaned up).[15] Accordingly, even if the parties had not agreed to delegate all issues of arbitrability to the arbitrator, arbitration would still be properly compelled under the parties' agreement.

## III. THIS ACTION SHOULD BE STAYED PENDING ARBITRATION

Under the Federal Arbitration Act, which is incorporated by the parties' agreements, this action should be stayed while Plaintiff's individual claims are arbitrated. *See* 9 U.S.C. § 3 (requiring court to issue a stay upon compelling arbitration); *Smith*, 601 U.S. at 475-76 (stay mandatory when claims are arbitrable).[16]

## **CONCLUSION**

For the foregoing reasons, Crunch respectfully requests that the Court issue an order compelling arbitration and staying this proceeding pending resolution of the arbitration.

---

[15] Moreover, Plaintiff's allegations, which raises issues of consent, *see also* FAC ¶ 4, that are also discussed in the Terms, which expressly puts her agreement at issue in this case. *See, e.g.*, Exhibit B at 13 (disclosures regarding use of personal data). As the Second Circuit has held, "[i]n determining whether a particular claim falls within the scope of the parties' arbitration agreement, we focus on the allegations in the complaint rather than the legal causes of action asserted." *Bldg. Sys.*, Inc., 58 F.3d at 20–21 (citations omitted). Here, because Plaintiff's allegations clearly touch on matters relating to the parties' agreements, they must be arbitrated. *See id.* ("If the allegations underlying the claims 'touch matters' covered by the parties' ... agreements, then those claims must be arbitrated, whatever the legal labels attached to them.")

[16] The parties' agreements also include a class action waiver. Crunch reserves the right to seek to have Plaintiff's class action allegations stricken and/or class certification denied based on his waiver of any purported right to file a putative class action.

By: */s/ Elana H. Somers*
Elana H. Somers
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
Telephone:  (212) 839-5300
Facsimile:  (212) 839-5599
Email: elana.somers@sidley.com

Ian M. Ross (*pro hac vice*)
SIDLEY AUSTIN LLP
1001 Brickell Bay Drive
Miami, FL 33131
Telephone:  (305) 391-5100
Facsimile:  (305) 391-5101
Email: iross@sidley.com

*Counsel for Crunch LLC*