**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

KRISTI JORDAN, individually and on behalf of all
others similarly situated,

Plaintiff,

v.

Case No. 1:24-cv-7118

CRUNCH, LLC,

Defendants.

**PLAINTIFF'S OPPOSITION TO
DEFENDANT'S AMENDED MOTION
<u>TO COMPEL ARBITRATION AND STAY PROCEEDINGS</u>**

By:    */s/ Elliot O. Jackson*
Elliot O. Jackson
NY Attorney Reg. No. 6076798
HEDIN LLP
1395 Brickell Ave., Suite 610
Miami, Florida 33131-3302
Telephone:   (305) 357-2107
Facsimile:    (305) 200-8801
ejackson@hedinllp.com

Tyler K. Somes
District of Columbia Bar No. 90013925
HEDIN LLP
1100 15th Street NW, Ste 04-108
Washington, D.C. 20005
Telephone: (202) 900-3332
Facsimile:    (305) 200-8801
tsomes@hedinllp.com

*Counsel for Plaintiff and Putative Class*

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

FACTUAL BACKGROUND..............................................................................................2

LEGAL STANDARD..........................................................................................................4

ARGUMENT ........................................................................................................................5

    I.     Defendant Fails to Establish the Existence of an Agreement to Arbitrate ...................6

       A. The Crunch+ Terms & Conditions Are a Valid Agreement ....................................6

       B. No Agreement to Arbitrate Exists Because the Crunch+ Terms & Conditions Contain a Mandatory Forum Selection Clause that Evidences Specific Intent to Supersede the Crunch.com Terms & Conditions .......................8

       C. No Agreement to Arbitrate Exists Because the Crunch+ Terms & Conditions Contain a Merger Clause that Evidence Specific Intent to Supersede the Crunch.com Terms & Conditions ....................................................10

     II.

     III.     Defendant's Request for a Stay Should Be Denied ...............................................18

I.     CONCLUSION.............................................................................................................18

## TABLE OF AUTHORITIES

**CASES**

*Applied Energetics, Inc. v. NewOak Cap. Markets, LLC*,
    645 F.3d 522 (2d Cir. 2011) ...................................................................... 13, 15, 16

*Coe v. Coca-Cola Co.*,
    702 F. Supp. 3d 140 (W.D.N.Y. 2023) ................................................................. 10

*Coinbase, Inc. v. Suski*,
    602 U.S. 143 (2024) ....................................................................................*passim*

*CreditSights, Inc. v. Ciasullo*,
    No. 05 CV 9345 (DAB), 2007 WL 943352 (S.D.N.Y. Mar. 29, 2007)................................ 14

*Dewitt Stern Grp., Inc. v. Eisenberg*,
    257 F. Supp. 3d 542 (S.D.N.Y. 2017)............................................................... 14, 15

*DiTella v. TransUnion, LLC*,
    No. 23 CIV. 11028 (KPF), 2024 WL 3594567 (S.D.N.Y. July 31, 2024)............................... 4

*Eisen v. Venulum Ltd.*,
    244 F. Supp. 3d 324 (W.D.N.Y. 2017) ................................................................. 15

*Goldman, Sachs & Co. v. City of Reno*,
    747 F.3d 733 (9th Cir. 2014) .......................................................................... 15

*Goldman, Sachs & Co. v. Golden Empire Sch. Fin. Auth.*,
    764 F.3d 210 (2d Cir. 2014) ........................................................................... 12

*Hanson Bldg. Materials Am., Inc. v. Pennington*,
    176 F. App'x 577 (5th Cir. 2006) ...................................................................... 16

*Harold H. Huggins Realty, Inc. v. FNC, Inc.*,
    575 F. Supp. 2d 696 (D. Md. 2008) .................................................................... 17

*HSBC Bank USA, Nat. Ass'n v. Adelphia Commc'ns Corp.*,
    No. 07-CV-553A, 2009 WL 385474 (W.D.N.Y. Feb. 12, 2009) ...................................... 4, 16

*Meyer v. Uber Technologies, Inc.*,
    868 F.3d 66 (2d Cir. 2017) ............................................................................. 10

*McIntosh v. United States*,
    601 U.S. 330 (2024)................................................................................13

*Nicosia v. Amazon.com, Inc.*,
    834 F.3d 220 (2d Cir. 2016) ...................................................................10

*Offshore Expl. & Prod., LLC v. Morgan Stanley Priv. Bank, N.A.*,
    626 F. App'x 303 (2d Cir. 2015) .............................................................12

*O'Shaughnessy v. Young Living Essential Oils, L.C.*,
    810 F. App'x 308, 312 (5th Cir. 2020) ....................................................13

*Pelaez v. Keane*,
    No. 93 CIV. 3950 (CSH), 1993 WL 541177 (S.D.N.Y. Dec. 29, 1993) ..............13

*Priv. One of New York, LLC v. JMRL Sales & Serv., Inc.*,
    471 F. Supp. 2d 216 (E.D.N.Y. 2007) .....................................................16

*Register.com, Inc. v. Verio, Inc.*,
    356 F.3d 393 (2d Cir. 2004) ...................................................................10

*Russell v. Mimeo, Inc.*,
    No. 08 CIV. 5354 (RJS), 2008 WL 6559743 (S.D.N.Y. Oct. 29, 2008) ..............4

*Shehadeh v. Horizon Pharma USA, Inc.*,
    No. 20 CIV. 8107 (AT), 2021 WL 4176254 (S.D.N.Y. Sept. 14, 2021)...............7

*Silano v. Sag Harbor Union Free Sch. Dist. Bd. of Educ.*,
    42 F.3d 719 (2d Cir. 1994)......................................................................13

*Simmons v. Burlington, C.R. & N.R. Co.*,
    159 U.S. 278 (1895) .................................................................................5

*Specht v. Netscape Commc'ns Corp.*,
    150 F. Supp. 2d 585 (S.D.N.Y. 2001)........................................................4

*Simmons v. Burlington, C.R. & N.R. Co.*,
    159 U.S. 278 (1895) .................................................................................7

*Westerngeco, L.L.C. v. Magseis FF LLC*,
    No. CV H-22-3080, 2025 WL 643069 (S.D. Tex. Feb. 27, 2025) ....................13

*Wu v. Uber Techs., Inc.*,
    2024 WL 4874383 (N.Y. Nov. 25, 2024) ..................................................10

**STATUTES**

Video Privacy Protection Act, 18 U.S. Code § 2710, *et seq.* .................................................*passim*

Plaintiff Kristi Jordan submits this response and incorporated memorandum of law in opposition to Defendant's Amended Motion to Compel Arbitration and Stay Proceedings, ECF No. 29 (the "Motion"), filed by Defendant Crunch LLC ("Crunch" or "Defendant").

## INTRODUCTION

Plaintiff's Complaint asserts a single count for violations of the Video Privacy Protection Act, 18 U.S. Code § 2710 ("VPPA"). *See* ECF No. 1. Her claim arises from Defendant's operation of a subscription-based video streaming service on the website www.crunchplus.com ("Crunch+"). *Id*. When Plaintiff and other consumers watched videos on that website, Defendant sent their personally identifiable information to Meta Platforms, Inc. ("Meta") in violation of the VPPA. *Id*.

Defendant has moved to compel this action into arbitration. The gravamen of Defendant's motion is that Plaintiff committed to arbitrate her VPPA claim because "Plaintiff signed up for her membership on the Crunch website, www.crunch.com (the "Website"), [where] she agreed to the 'Membership Terms & Conditions'" that contained, *inter alia*, an arbitration agreement. *See* ECF No. 29 at 1. This dispute is not that simple.

The "membership" Defendant refers to is a gym membership. *See id*. It is not her membership to Crunch+, which is a separate subscription service, with a separate membership structure, which is paid for separately, and has a separate sign-up flow. In registering for a gym membership, Plaintiff purportedly entered into a membership agreement with the entity that operates that gym (the "Gym Membership Terms & Conditions"). *See id*. Defendant moves to compel based upon the Gym Membership Terms & Conditions. *Id*. However, a subsequent agreement entered into by the Parties during the sign-up flow for the Crunch+ streaming service governs this dispute (the "Crunch+ Terms & Conditions").

By its own terms, this subsequent agreement, the Crunch+ Terms & Conditions, expressly supersedes any prior agreements—such as the Gym Membership Terms & Conditions. The second agreement, the Crunch+ Terms & Conditions, contains both a merger clause and a dispute resolution provision with a mandatory forum selection clause. It does not contain an arbitration provision. Since the Crunch+ Terms & Conditions supersede the former agreement and govern this dispute, no agreement to arbitrate exists. Moreover, even if such an agreement does exist, Defendant is estopped from denying the effect of the mandatory forum selection clause in the second agreement.

Rather than address the second agreement, Defendant avoids it entirely. Defendant omits any reference to the Crunch+ Terms & Conditions. Because Defendant has failed to even address the second agreement, Defendant fails to meet its burden to establish the existence of an agreement to arbitrate by the preponderance of the evidence and the Motion must be denied.

## FACTUAL BACKGROUND

On September 19, 2024, Plaintiff commenced this action to redress Defendant's violations of consumers' privacy rights as established by the VPPA. ECF No. 1. Over the past two years, Defendant has regularly disclosed its consumers' "personally identifiable information," including the "specific video materials" they "requested or obtained," to Meta via programming code known as the Meta Pixel. *See* 18 U.S.C. § 2710(b)(1). Defendant installed the Meta Pixel on its website www.crunchplus.com, where it sells access to prerecorded workout videos. ECF No. 1, ¶¶ 48-50. The personally identifiable information Defendant disclosed to Meta includes both consumers' Facebook IDs ("FIDs") and the specific titles of the prerecorded videos that each consumer requested or obtained, as well as the corresponding URLs where those videos were hosted. *See* 18 U.S.C. § 2710(a)(3); ECF No. 5, ¶ 5.

Defendant filed a motion to compel arbitration on December 9, 2024. *See* ECF No. 18. This motion sought to compel arbitration based upon a gym membership agreement purportedly entered into between Defendant and Plaintiff. *See id.* Following meet and confer efforts, Defendant later "determined that the form of membership agreement attached to and referenced in the Motion was inadvertently a form used in 2024, not 2023, when Plaintiff signed up for her Crunch membership." ECF No. 27. Defendant sought leave to withdraw its motion, enter an amended motion, and enter a stipulated discovery and briefing schedule, which the Court granted on January 15, 2025. ECF No. 28. Defendant filed its amended motion to compel arbitration (the "Motion") on January 17, 2025. ECF No. 29. The Motion attaches the version of the membership agreement that Plaintiff purportedly agreed to when she signed for a gym membership on November 3, 2023, via the website www.crunch.com, the Gym Membership Terms & Conditions. *See* ECF No. 30.

Defendant never mentions the existence of a separate, subsequent agreement between the parties. Defendant's Chief Marketing Officer, Chad Waetzig, submitted a declaration in support of the Motion. ECF No. 30. In it, he attests that on or about September 11, 2024, Plaintiff signed up for a subscription to Defendant's Crunch+ streaming video service. ECF No. 30, ¶ 4. However, Defendant never acknowledges the Crunch+ Terms & Conditions governing disputes relating to Plaintiff's use of the Crunch+ service. Reading Defendant's Motion alone, the Court would never know that this subsequent agreement even existed. Nevertheless, the Crunch+ Terms & Conditions exclusively govern this dispute. As shown below, the Crunch+ Terms & Conditions expressly supersede any prior agreements between the Parties, include both a complete merger clause and a mandatory forum selection clause, and omit any reference to arbitration.

Defendant's motion fails for two reasons. First, Defendant has not met its burden to show the existence of an agreement to arbitrate between the parties. The Crunch+ Terms & Conditions

exclusively govern this dispute and contain no such agreement to arbitrate. Second, Defendant is estopped from denying the effect of the mandatory forum selection clause in the Crunch+ Terms & Conditions. For these reasons, Defendant's Motion should be swiftly denied.

## LEGAL STANDARD

In order to grant a motion to compel arbitration, a court must find by a preponderance of the evidence that an agreement to arbitrate exists. *DiTella v. TransUnion, LLC*, No. 23 CIV. 11028 (KPF), 2024 WL 3594567, at *4 (S.D.N.Y. July 31, 2024). "Arbitration is a matter of contract and consent, and . . . disputes are subject to arbitration if, and only if, the parties actually agreed to arbitrate those disputes." *Coinbase, Inc. v. Suski*, 602 U.S. 143, 145 (2024). "[W]hether a contract was formed . . . is a question of state law." *Specht v. Netscape Commc'ns Corp.*, 150 F. Supp. 2d 585, 590 (S.D.N.Y. 2001) ["*Specht I*"], *aff'd*, 306 F.3d 17 (2d Cir. 2002). When multiple agreements exist, "the question whether these parties agreed to arbitrate [] can be answered only by determining which contract applies," a non-delegable threshold question for the court. *Coinbase*, 602 U.S. at 150. When a "motion to compel arbitration is opposed on the ground that no agreement to arbitrate has been made between the parties, a district court should give the opposing party the benefit of all reasonable doubts and inferences that may arise." *Russell v. Mimeo, Inc.*, No. 08 CIV. 5354 (RJS), 2008 WL 6559743, at *1 (S.D.N.Y. Oct. 29, 2008).

Estoppel is an equitable doctrine which prevents parties from denying the effect of existing contract provisions. Quasi-estoppel bars a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken. *HSBC Bank USA, Nat. Ass'n v. Adelphia Commc'ns Corp.*, No. 07-CV-553A, 2009 WL 385474, at *18 (W.D.N.Y. Feb. 12, 2009) (citing *Chautauqua County Fed'n of Sportsmens Club, Inc. v. Caflisch*, 15 A.D.2d 260, 264, 222 N.Y.S.2d 835 (4th Dep't 1962).), *aff'd sub nom. In re Adelphia Recovery Tr.*, 634 F.3d 678 (2d Cir. 2011). Quasi-

estoppel applies where it would be unconscionable to allow a person to maintain a position inconsistent with one in which he acquiesced, or of which he accepted a benefit. *Id*. (internal quotations and citations omitted). This is a long-standing judicial principle rooted in notions of election, waiver, ratification, affirmance, acquiescence, or acceptance of benefits. *See Simmons v. Burlington, C.R. & N.R. Co.*, 159 U.S. 278 (1895).

## ARGUMENT

Defendant's Motion should be denied for two reasons. First, Defendant has not met its burden to establish the existence of an agreement to arbitrate. The Gym Membership Terms & Conditions relied upon by Defendant were superseded by the Crunch+ Terms & Conditions and since the governing agreement contains no arbitration provision, no agreement to arbitrate exists. Second, Defendant is barred from denying the effect of the mandatory forum selection clause in the second agreement by the doctrine of quasi-estoppel.

Defendant's Motion raises two basic arguments. First, Defendant contends that Plaintiff manifested her assent to an enforceable clickwrap agreement when she signed up for a gym membership on the www.crunch.com website, and in doing so agreed to the Gym Membership Terms & Conditions, which contain an arbitration provision. ECF No. 31 at 8. Second, Defendant contends that Plaintiff "agreed to delegate any issue relating to the arbitrability of her dispute to an arbitrator." *See id*. at 9. In making this second point, Defendant attempts to preempt arguments that it anticipates Plaintiff may raise in opposition to the Motion. *See id*. at 10-17. Defendant's arguments fail for threshold reasons, however.

Defendant's focus on the Gym Membership Terms & Conditions' purported delegation provision is misplaced. ECF No. 31 at 10 – 17. This Court cannot and should not reach Defendant's delegation argument. In November 2024, the Supreme Court unanimously held that

whether two parties' prior agreement is superseded by a subsequent agreement is a question for the court, not an arbitrator. *Coinbase*, 602 U.S. at 145 ("before either the delegation provision or the forum selection clause can be enforced, a court needs to decide what the parties have agreed to—*i.e.,* which contract controls.").

 *Coinbase* is directly on point and must guide this Court's analysis. That case involved "a conflict between two contracts executed by petitioner Coinbase, Inc., operator of a cryptocurrency exchange platform, and respondents, who use Coinbase." *Coinbase*, 602 U.S. at 143. The first contract contained an arbitration provision with a delegation clause. *Id*. The second contract contained "a forum selection clause providing that California courts 'shall have sole jurisdiction of any controversies regarding the [relevant] promotion.'" *Id*. Change the identities of the parties and the forum selected by the second contract, and that is exactly the situation presented here.

 The Supreme Court easily resolved the question of who should decide which contract applies. It unanimously determined that this presents a question for the court. *Coinbase*, 602 U.S. at 145. Applying "traditional contract principles," it wrote that "the question whether these parties agreed to arbitrate arbitrability can be answered only by determining which contract applies." *Id*. at 149-150. It further explained:

> When we home in on the conflict between the delegation clause in the first contract and forum selection clause in the second, the question is whether the parties agreed to send the given dispute to arbitration—and, per usual, that question must be answered by a court.

*Id*. The Court rejected several arguments to the contrary based on severability, California state law, and potential practical effects of the holding. *Id.* at 151. Under *Coinbase*, the law is crystal clear that this Court, not an arbitrator, must determine which contract applies to this dispute.

 The Crunch+ Terms and Conditions govern this dispute. The mandatory forum selection clause contained in therein sets the forum in which this dispute must be adjudicated. Not a single

case cited by Defendant's memorandum of law involved multiple agreements. Defendant does not mention or address the Crunch+ Terms & Conditions. The only evidence bearing on the Crunch+ Terms & Conditions presented by Defendant is Mr. Waetzig's statement that Plaintiff purchased "a subscription on the www.crunchplus.com website on or about September 11, 2024." ECF No. 30, ¶ 4. As shown below, this statement only affirms the existence of the subsequent, superseding agreement between the Parties.

Defendant has not met its burden to show the existence of an agreement to arbitrate by a preponderance of the evidence. Even if Defendant has made that showing, it is estopped from denying the effect of the mandatory forum selection clause it drafted, agreed to, and imposed upon its consumers in the Crunch+ Terms & Conditions. For these reasons, the Motion must be denied.

## I.     Defendant Fails to Establish the Existence of an Agreement to Arbitrate

"Under New York law, the party seeking arbitration bears the burden of proving, by a preponderance of the evidence, the existence and validity of a[] valid arbitration agreement." *Shehadeh v. Horizon Pharma USA, Inc.*, No. 20 CIV. 8107 (AT), 2021 WL 4176254, at *2 (S.D.N.Y. Sept. 14, 2021). As shown below, Defendant has not met that burden. The Motion must be denied.

### A.  The Crunch+ Terms & Conditions Are a Valid Agreement

The Crunch+ Terms & Conditions constitute a valid agreement between the parties. Plaintiff purchased access to the Crunch+ service on or about September 11, 2024. This is both alleged in the Complaint and supported by the record evidence. *See, e.g.*, ECF No. 1, ¶ 4. In a declaration submitted in support of Defendant's Motion, Mr. Waetzig confirms that Plaintiff purchased "a subscription on the www.crunchplus.com website on or about September 11, 2024." ECF No. 30, ¶ 4. Plaintiff subsequently served a Request for Admission on Defendant. *See* Defendant's Responses

and Objections to Plaintiff's First Set of Discovery Requests ("Def.'s Discovery Responses") at 8,

attached hereto as **Exhibit 1**.  This Request for Admission stated:

> Admit that the version of the Terms & Conditions attached hereto as Exhibit A is the
> version of the Terms & Conditions that was accessible by visitors to the Crunch+
> website (www.crunchplus.com) at the time Plaintiff subscribed to the Crunch+
> service as alleged in Paragraph 4 of the Waetzig Declaration.

*Id*.  Subject to a number of objections, Defendant answered:

> Crunch states that the text that appears in the document attached to the Requests as
> Exhibit A is the same text that appeared in the version of the Terms & Conditions
> that was accessible at https://www.crunchplus.com/page/terms-ofservice/ on the date
> Plaintiff subscribed to the Crunch+ service as alleged in Paragraph 4 of the Waetzig
> Declaration.

*Id*. at 9.[1]  Thus, the allegations and evidence show that Plaintiff purchased her subscription to the

Crunch+ video streaming service on or about September 11, 2024.

On or about that date, the sign-up flow on the Crunch+ video streaming service contained a

clickwrap agreement that required users to consent to the Crunch+ Terms & Conditions.  As

confirmed by Mr. Waetzig, the text of the Crunch+ Terms & Conditions accessible at that time

through the checkout flow was the "same text" as that attached to Plaintiff's First Set of Discovery

Requests.  *See* Ex. 2, Pl.'s Discovery Requests, Ex. A (providing the then-live text of the Crunch+

Terms & Conditions).  In support of this opposition brief, Plaintiff submits a screenshot depicting

the first screen in the Crunch+ checkout flow as it appeared on September 11, 2024:[2]

---

[1] Plaintiff's First Set of Discovery Requests and their attached Exhibit A ("Pl.'s Discovery Requests"), as referenced
in Defendant's answer to the Request for Admission, are attached hereto as **Exhibit 2**.

[2] On the www.crunchplus.com check-out flow, the link to the Crunch+ Terms & Conditions consisted of hyperlinked
text reading "terms of service."  The Crunch+ Terms & Conditions themselves are entitled "Terms & Conditions."
*See* Ex. 2, Pl.'s Discovery Requests, Ex. A.  Plaintiff has thus adopted the term "Crunch+ Terms & Conditions" to refer
to the agreement entered by Defendant's consumers and Defendant during the registration process for the Crunch+
service.



*See* Declaration of Tyler K. Somes (the "Somes Decl."), ¶ 2, attached hereto as **Exhibit 3**.  This

clickwrap agreement is very similar to the sign-up screen that Defendant relies upon to establish the

clickwrap agreement for Crunch.com gym membership.  *See* ECF No. 31 at 1.  Both are shown in

the side-by-side below:



          **Fig. A – Crunch.com (ECF No. 30-1.)**                **Fig. B – Crunch+ (*See* Somes Decl., at ¶ 2)**

9

The Crunch+ presentation is the quintessential clickwrap agreement. In cases involving smartphone or online-based contracts, "[c]ourts around the country have recognized that [an] electronic 'click' can suffice to signify the acceptance of a contract . . . as long as the layout and language of the site give the user reasonable notice that a click will manifest assent to an agreement." *Meyer v. Uber Technologies, Inc.*, 868 F.3d 66, 75 (2d Cir. 2017). "Manifestation of assent to an online contract is not meaningfully different, and can be accomplished by 'words or silence, action or inaction,' so long as the user 'intends to engage in the conduct and knows or has reason to know that the other party may infer from his conduct that he assents.'" *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 232 (2d Cir. 2016). "One common way of alerting internet users to terms and conditions is via a 'clickwrap' agreement, which typically requires users to click an 'I agree' box after being presented with a list of terms or conditions of use. *See id*. Clickwrap agreements force users "to expressly and unambiguously manifest either assent or rejection prior to being given access to the product." *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 429 (2d Cir. 2004).

The Crunch+ website's clickwrap agreement creates a binding contract. It requires visitors to click an 'I agree' box to "expressly and unambiguously manifest either assent . . . prior to being given access to the product." *See Register.com*, 356 F.3d at 429; *see also Meyer*, 868 F.3d at 78; *Coe v. Coca-Cola Co.*, 702 F. Supp. 3d 140, 156 (W.D.N.Y. 2023); *Wu v. Uber Techs., Inc.*, 2024 WL 4874383 (N.Y. Nov. 25, 2024). As Defendant argues in its memorandum in support of the Motion, this is sufficient to create an enforceable agreement. *See* ECF No. 31 at 6 – 8.

### B.  The Crunch+ Terms & Conditions Govern This Dispute

The Crunch+ Terms & Conditions govern this dispute and supersede any prior agreement entered into by the parties.

10

Defendant contends that Plaintiff signed up for a gym membership on or about November 3, 2023. ECF No. 30, ¶ 4. In doing so, Defendant alleges that Plaintiff entered into the Gym Membership Terms & Conditions. *Id*. However, as shown above, Plaintiff registered for the Crunch+ service—a service governed by the Crunch+ Terms & Conditions—ten months later, on or about September 11, 2024. Thus, the Crunch+ Terms & Conditions agreement post-dates the purported Gym Membership Terms & Conditions agreement by almost a year.

The Crunch+ Terms & Conditions govern this dispute. In a section labeled "DISPUTES," they provide that: "**Any action arising out of or relating to this Agreement or your use of the Crunch Live Service must be commenced in the state or federal courts located in New York County, New York, United States of America**. . . ."[3] Ex. 2, Pl.'s Discovery Requests at 17 (emphasis added). Consistent with this forum selection clause, no arbitration agreement appears in the Crunch+ Terms & Conditions. *See id*.

There is also a merger clause in the Crunch+ Terms & Conditions. A section labeled "ENTIRE AGREEMENT" provides that "This Agreement constitutes the entire understanding between Crunch and you concerning the subject matter hereof and **supersedes all prior agreements and understandings regarding the same**." Ex. 2, Pl.'s Discovery Requests at 17. As shown, this merger clause expressly provides that the Crunch+ Terms & Conditions supersede prior agreements regarding the Crunch+ service. *Id*.

As to the threshold question of which agreement governs this dispute, the Crunch+ Terms & Conditions clearly control by their own terms. *See Coinbase*, 602 U.S. at 145.

---

[3] The Crunch+ service was previously known as Crunch Live.

**C. No Agreement to Arbitrate Exists Because the Crunch+ Terms & Conditions Contain a Mandatory Forum Selection Clause**

The mandatory forum selection clause in the Crunch+ Terms & Conditions supersedes any dispute resolution provision previously applicable to this action or purportedly contained in a prior agreement. Since the Crunch+ Terms & Conditions do not contain an arbitration provision, no agreement to arbitrate exists.

"In this Circuit, an agreement to arbitrate is superseded by a later-executed agreement containing a forum selection clause if the clause 'specifically precludes' arbitration . . . but there is no requirement that the forum selection clause mention arbitration[.]" *Goldman, Sachs & Co. v. Golden Empire Sch. Fin. Auth.*, 764 F.3d 210, 212 (2d Cir. 2014). Only when the forum selection clause is *permissive* will it not supersede an earlier arbitration agreement. *Offshore Expl. & Prod., LLC v. Morgan Stanley Priv. Bank, N.A.*, 626 F. App'x 303, 307 (2d Cir. 2015). That is because permissive language should "be read 'as complementary to [the] agreement to arbitrate.'" *Id.* Because the Crunch+ Terms & Condition contain a *mandatory* forum selection clause, Defendant's Motion must fail.

The seminal case on forum selection clauses and their supersession is *Goldman,* 764 F.3d at 214. In *Goldman*, the Second Circuit evaluated whether the securities underwriters' agreement with FINRA pursuant to Rule 12200 was superseded by later-executed broker-dealer agreements that contained forum selection clauses. *See id*. Each broker-dealer agreement contained the following forum selection clause:

> The parties agree that **all actions and proceedings** arising out of this Broker–Dealer Agreement or any of the transactions contemplated hereby **shall be brought in the United States District Court in the County of New York** and that, in connection with any such action or proceeding, **submit to the jurisdiction of**, and venue in, such court.

*See id.* at 212 (emphasis added).  The Second Circuit concluded that because this provision "is all-inclusive and mandatory[,]" the broker-dealer agreement superseded the FINRA agreement.  *Id.*

The forum selection clause in the Crunch+ Terms & Conditions is like the one in *Goldman*. Both are mandatory forum selection clauses.  The Crunch+ Terms & Conditions' forum selection clause states:

> **DISPUTES**
> **Any action** arising out of or relating to this Agreement or your use of the Crunch Live Service **must be commenced** in the state or federal courts located in New York County, New York, United States of America (and you **consent to the jurisdiction of those courts**).

Ex. 2, Pl.'s Discovery Requests at 17 (emphasis added).  This language tracks the clause in *Goldman* because there, as here, both use mandatory language such as "shall" and "must" to establish the intended forum.[4]  The Crunch+ Terms & Conditions' forum selection clause is also "all-inclusive" because it requires "any action" to be brought in the designated forum, just as the *Goldman* clause covered "all actions and proceedings."  *See also Applied Energetics, Inc. v. NewOak Cap. Markets, LLC*, 645 F.3d 522, 525 (2d Cir. 2011) (finding that an initial agreement containing an arbitration provision was superseded by a later agreement that contained a forum selection clause because "[b]oth provisions are all-inclusive, both are mandatory, and neither admits the possibility of the other."); *see also Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 746 (9th Cir. 2014) (earlier agreement superseded because of "the all-inclusive breadth of the forum selection clauses ('all actions and proceedings'), their mandatory nature ('shall'), and their reference to a judicial forum

---

[4] In a separate context, the Second Circuit has stated the words "shall" and "must" constitute "explicitly mandatory language."  *Silano v. Sag Harbor Union Free Sch. Dist. Bd. of Educ.*, 42 F.3d 719, 725 (2d Cir. 1994).  Other courts have reached the same conclusion.  *Pelaez v. Keane*, No. 93 CIV. 3950 (CSH), 1993 WL 541177, at *2 (S.D.N.Y. Dec. 29, 1993) ("the regulation arguably does employ language of an unmistakably mandatory character ("must")."); *McIntosh v. United States*, 601 U.S. 330, 342 (2024) (referring to "must" as mandatory language).

('the United States District Court for the District of Nevada').").[5]  This Court should reach the same conclusion and deny Defendant's Motion because the mandatory forum selection clause in the Crunch+ Terms & Conditions governs this dispute.

### D. No Agreement to Arbitrate Exists Because the Crunch+ Terms & Conditions Contain a Merger Clause that Evidence Specific Intent to Supersede the Membership Terms & Conditions

The Court should deny Defendant's Motion for the separate and independent reason that the Crunch+ Terms & Conditions supersede the Gym Membership Terms & Conditions by means of the subsequent agreement's merger clause.

Many cases have found that "a subsequent contract not pertaining to 'precisely the same subject matter' will not supersede an earlier contract unless the subsequent contract has definitive language indicating it revokes, cancels or supersedes that specific prior contract." *CreditSights, Inc. v. Ciasullo*, No. 05 CV 9345 (DAB), 2007 WL 943352, at *6 (S.D.N.Y. Mar. 29, 2007).  When determining if a particular provision is superseded by a provision in a subsequent contract, courts look to "(1) whether there is an integration and merger clause that explicitly indicates that the prior [agreement] is superseded; (2) whether the two [agreements] have the same general purpose or address the same general rights; and (3) whether the two [agreements] can coexist or work in tandem." *Dewitt Stern Grp., Inc. v. Eisenberg*, 257 F. Supp. 3d 542, 581–82 (S.D.N.Y. 2017), *aff'd*, 734 F. App'x 48 (2d Cir. 2018).  Under this standard, the subsequent agreement formed by the Crunch+ Terms & Conditions supersedes any prior agreement formed by the Gym Membership Terms & Conditions.

---

[5] Courts in Texas have reached the same conclusion that a subsequent agreement will supersede an earlier agreement when the former has a forum-selection clause that precludes arbitration.  *See Westerngeco, L.L.C. v. Magseis FF LLC*, No. CV H-22-3080, 2025 WL 643069, at *13 (S.D. Tex. Feb. 27, 2025); *O'Shaughnessy v. Young Living Essential Oils, L.C.*, 810 F. App'x 308, 312 (5th Cir. 2020) (subsequent agreement superseded the earlier agreement because the panel's "reading of these two conflicting provisions reveals that they cannot be harmonized.").

*Eisen v. Venulum Ltd.*, 244 F. Supp. 3d 324 (W.D.N.Y. 2017) is instructive because it involved three separate investment agreements spanning a five-year period between an investor and a foreign wine company. The investor eventually brought suit alleging state law claims and violations of both Securities and Exchange Acts against the wine company, the wine company which later sought to compel arbitration under the terms of the second contract. *See id.* at 333. The court determined that the parties' third contract superseded the second contract because (1) the third contract contained a merger clause with specific supersession language, (2) both contracts were "for the sale of wine[,]" and (3) the very language used in the third contract displaced any earlier contract. *See id.* at 334-35. While *Eisen* does not specifically cite *Dewitt*, the court still utilized each *Dewitt* consideration to reach its conclusion.

In the present case, each *Dewitt* consideration is met, and the Crunch+ Terms & Conditions governs. First, the Crunch+ agreement contains an integration/merger clause. Indeed, the relevant clause appears under the heading "Entire Agreement" and states: "[t]his Agreement constitutes **the entire understanding** between Crunch and you **concerning the subject matter hereof** and **supersedes all prior agreements** and understandings **regarding the same**." *See* Ex. 2, Pl.'s Discovery Requests at 17 (emphasis added). This clause contains specific language eviscerating any prior agreement between the Parties concerning the subject matter covered in the Crunch+ Terms & Conditions, which is like the language used in *Eisen*. *See also Dewitt*, 257 F. Supp. 3d at 582 (finding the first element was established when the clause stated "with respect to the subject matter hereof" to evidence a specific rather than general reach); *Applied Energetics,* 645 F.3d at 525 n.2 (same – "the Placement Agreement went beyond merely stating that the agreement "represents the entire

understanding between the parties. . . It further stated that 'there are no agreements or understandings with respect to the subject matter hereof.'").[6]

Second, the Crunch+ Terms & Conditions and the Membership Terms & Conditions address the same general rights.  Both agreements define rights and responsibilities between consumers and Defendant.  Both establish procedures for resolving disputes between then.  As substantively relevant to this dispute, both also purport to address consumer's data privacy interests.  *See* ECF No. 30-2, ¶ 31 ("All processing of your personal data will be in accordance with our Privacy, CCTV & Cookie Policy."); Ex. 2, Pl.'s Discovery Requests at 17 (similar); *Priv. One of New York, LLC v. JMRL Sales & Serv., Inc.*, 471 F. Supp. 2d 216, 223 (E.D.N.Y. 2007) (element satisfied where "Agreement One addressed the same subject matter as the subsequent agreements[,]" though the first agreement covered other matters not covered in subsequent agreements); *Dewitt*, 257 F. Supp. 3d at 582 (same).

Third, and as explained above, the Crunch+ Terms & Conditions' agreement's mandatory forum selection clause displaces the Membership Agreement's arbitration provision because the two cannot be reconciled.  *See, e.g.*, *Applied Energetics,* 645 F.3d at 525.  This is akin to *Eisen*, where the court found that the subsequent agreement's "language states an intention of the parties to completely replace and 'supersede' any prior agreement with the terms of the Third Contract."  244 F. Supp. 3d at 334.  Because each *Dewitt* consideration is met, the Court should deny Defendant's Motion on the separate and independent basis that Gym Membership Terms & Conditions are superseded through the operation of the merger clause in the Crunch+ Terms & Conditions.

---

[6] Court in the Fifth Circuit regularly find that earlier agreements are superseded by subsequent agreements containing a merger clause.  *Hanson Bldg. Materials Am., Inc. v. Pennington*, 176 F. App'x 577, 579 (5th Cir. 2006).

## II.    Defendant is Estopped from Denying the Effect of the Forum Selection Clause in the Crunch+ Terms & Conditions

Even if the Gym Membership Terms & Conditions govern this dispute—although they do not—this Court should hold that Defendant is estopped from denying the effect of the mandatory forum selection clause in the Crunch+ Terms & Conditions.

Quasi-estoppel prevents a party from asserting, to another's disadvantage, a right inconsistent with a position previously taken. *HSBC Bank USA*, 2009 WL 385474 at *18. This doctrine applies where it would be unconscionable to allow a person to maintain a position inconsistent with one in which he acquiesced, or of which he accepted a benefit. *Id.* Here, quasi-estoppel operates to bar Defendant from denying the effect of the mandatory forum selection clause in the Crunch+ Terms & Conditions.

Defendant drafted the Crunch+ Terms & Conditions. It offered these terms to consumers on a take-it-or-leave-it basis. Defendant received benefits under the Crunch+ Terms & Conditions when it accepted payment from Plaintiff in exchange for her access to the Crunch+ streaming service. Defendant cannot now deny the effect and operation of the mandatory forum selection clause contained in the Crunch+ Terms & Conditions due the doctrine of quasi-estoppel.

Courts have previously applied quasi-estoppel in analogous situations. For example, in *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, the court found that a party was estopped from denying the validity of a subsequent agreement when it wished to rely upon the arbitration clause contained in a prior agreement. 575 F. Supp. 2d 696, 711 (D. Md. 2008). It determined that permitting the party to deny the effect of the subsequent agreement would be "inconsistent with its prior representations" and "unconscionable." *Id.* Based upon this holding, the court denied the motion to compel arbitration. *Id.* at 714; *see also Sec. Plans, Inc. v. CUNA Mut. Ins. Soc.*, 769 F.3d 807, 816 (2d Cir. 2014) ("As a general matter, 'a party may not maintain a promissory estoppel claim where

the promises on which the claim is based are expressly contradicted by a later written agreement covering the same subject matter.'").

The same result should hold here.  Defendant represented to its consumers, including Plaintiff, that the mandatory forum selection clause in the Crunch+ Terms & Conditions would apply to disputes concerning the Crunch+ service.  Defendant accepted benefits premised on its consent to that condition.  Defendant now seeks to avoid applying that condition to the detriment of Plaintiff.  That is inconsistent with Defendant's prior representations, wholly unconscionable, and prohibited by the doctrine of quasi-estoppel.

The Court should hold that Defendant is estopped from denying the effect of the mandatory forum selection clause in the Crunch+ Terms & Conditions and deny the Motion.

## I.    Defendant's Request for a Stay Should Be Denied

Lastly, Defendant argues that "this action should be stayed while Plaintiff's individual claims are arbitrated."  *See* ECF No. 31 at 17.  Again, Defendant is incorrect.  Because Defendant has not met its burden to show that an agreement to arbitrate exists, and because Defendant is estopped from denying the effect of the forum selection clause in the Crunch+ Terms & Conditions, Defendant's request for a stay must be rejected.  The Motion should be denied in its entirely.

## II.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendant's Motion in its entirety.

Respectfully submitted,

Dated: March 14, 2025                    **HEDIN LLP**

*/s/ Elliot O. Jackson*

Elliot O. Jackson
NY Attorney Reg. No. (6076798)
HEDIN LLP
1395 Brickell Ave., Suite 610
Miami, Florida 33131-3302
Telephone:   (305) 357-2107
Facsimile:    (305) 200-8801
ejackson@hedinllp.com

Tyler K. Somes (*pro hac vice*)
District of Columbia Bar No. 90013925
HEDIN LLP
1100 15th Street NW, Ste 04-108
Washington, D.C. 20005
Telephone: (202) 900-3332
Facsimile:    (305) 200-8801
tsomes@hedinllp.com

*Counsel for Plaintiff and Putative Class*

## **WORD COUNT VERIFICATION**

I, Elliot Jackson, certify that according to the word count of the word-processing program used to prepare the foregoing memorandum of law, and exclusive of the portions of it that are excluded by Local Rule 7.1, there are 5,395 words in the document.