## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KRISTI JORDAN, *individually and on behalf of all others similarly situated,*<br><br>    Plaintiff,<br><br>        v.<br><br>CRUNCH, LLC,<br><br>    Defendant. | Case No. 1:24-cv-7118 (AKH) |

## REPLY BRIEF IN SUPPORT OF CRUNCH, LLC'S AMENDED
## <u>MOTION TO COMPEL ARBITRATION AND TO STAY PROCEEDINGS</u>

James R. Horner
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599
Email: jhorner@sidley.com

Ian M. Ross (*pro hac vice*)
SIDLEY AUSTIN LLP
1001 Brickell Bay Drive
Miami, FL 33131
Telephone: (305) 391-5100
Facsimile: (305) 391-5101
Email: iross@sidley.com

*Counsel for Defendant Crunch LLC*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................................1

ARGUMENT .........................................................................................................................4

I.     PLAINTIFF'S OPPOSITION DOES NOT SET FORTH ANY EVIDENCE DISPUTING THAT SHE ENTERED INTO AN ARBITRATION AGREEMENT WITH CRUNCH ................................................................................................4

II.    EVEN IF THE CRUNCH+ TERMS AND CONDITIONS WERE APPLICABLE HERE, THE OPPOSITION FAILS TO SHOW THAT THEY SUPERSEDE THE ARBITRATION AGREEMENT.......................................................................7

     A.    Nothing in the Crunch+ Terms and Conditions alters or impacts the Arbitration Agreement....................................................................................................8

     B.    Plaintiff's argument that a subsequent agreement containing a merger clause automatically supersedes a prior agreement to arbitration should be rejected ..........11

     C.    Plaintiff's estoppel argument should be rejected ......................................15

III.   THIS ACTION SHOULD BE STAYED PENDING ARBITRATION.......................17

CONCLUSION......................................................................................................................17

## Declaration and Exhibits

Declaration of Chad Waetzig

-Exhibit A: Screenshot of Sign Up Page

-Exhibit B: Screenshot of Completion Page

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Applied Energetics, Inc. v. NewOak Cap. Markets, LLC*,
  645 F.3d 522 (2d Cir. 2011)......................................................................................9, 14

*Aspen American Ins. Co. v. Blackbaud, Inc*.,
  624 F. Supp. 3d 982 (N.D. Ind. 2022) ...................................................................10

*Aviation Fin. Co. Ltd. v. Chaput*,
  No. 14-cv-8313 (CM), 2015 WL 13203653 (S.D.N.Y. Mar. 12, 2015)..................14

*Bayway Refining Co. v. Oxygenated Marketing and Trading A.G.*,
  215 F.3d 219 (2d Cir. 2000)......................................................................................1

*Citigroup Glob. Markets Inc. v. All Children's Hosp., Inc.*,
  5 F. Supp. 3d 537 (S.D.N.Y. 2014) .........................................................................9

*Coinbase, Inc. v. Suski*,
  602 U.S. 143 (2024)......................................................................................... *passim*

*CreditSights, Inc. v. Ciasullo*,
  No. 05-cv-9345 (DAB), 2007 WL 943352 (S.D.N.Y. Mar. 29, 2007)...................15

*Cruthis v. Metropolitan Life Ins. Co.*,
  356 F.3d 816 (7th Cir. 2004) .................................................................................10

*Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S.*,
  9 F.3d 1060 (2d Cir. 1993)......................................................................................16

*Dewitt Stern Grp., Inc. v. Eisenberg*,
  257 F. Supp. 3d 542 (S.D.N.Y. 2017)..............................................................13, 14

*EBI-Detroit, Inc. v. City of Detroit*,
  279 F. App'x 340 (6th Cir. 2008) ..........................................................................10

*Eisen v. Venulum Ltd.*,
  244 F. Supp. 3d 324 (W.D.N.Y. 2017)...................................................................15

*Fantasia Distribution Inc. v. Magellan Tech. Inc.*,
  No. 20-cv-4340 (KAM) (VMS), 2023 WL 2614209 (E.D.N.Y. Mar. 23, 2023) .....5

*Generali Espana de Seguros y Reaseguros, S.A. v. Speedier Shipping, Inc.*,
  No. 22-1150, 2023 WL 3362839 (2d Cir. May 11, 2023).......................................4

*Goldman, Sachs & Co. v. Golden Empire Schs. Fin. Auth.*,
    922 F. Supp. 2d 435 (S.D.N.Y. 2013) ................................................................. 12

*Goldman, Sachs & Co. v. Golden Empire Sch. Fin. Auth.*,
    764 F.3d at 212 ....................................................................................... *passim*

*Hanson Bldg. Materials Am., Inc. v. Pennington*,
    176 F. App'x 577 (5th Cir. 2006) ...................................................................... 14

*Harold H. Huggins Realty, Inc. v. FNC, Inc.*,
    575 F. Supp. 2d 696 (D. Md. 2008) ................................................................... 16

*HSBC Bank USA, Nat. Ass'n v. Adelphia Comm'ns Corp.*,
    No. 07-cv-553A, 2009 WL 385474 (W.D.N.Y. Feb. 12, 2009) ............................ 16

*Long Side Ventures, LLC v. Adarna Energy Corp.*,
    No. 12-cv-6836 (LTS) (MHD), 2014 WL 4746026 (S.D.N.Y. Sept. 24, 2014) ..................... 13

*Merrill Lynch, Pierce Fenner & Smith Inc. v. Sohmer*,
    No. 16-cv-1856 (MKB), 2019 WL 1441126 (E.D.N.Y. Mar. 29, 2019) .................... 5

*Mobile Real Estate, LLC v. NewPoint Media Group, LLC*,
    460 F. Supp. 3d 457 (S.D.N.Y. 2020) ................................................................. 15

*O'Shaughnessy v. Young Living Essential Oils, LC*,
    810 F. App'x 308 (5th Cir. 2020) ...................................................................... 15

*Oberweis Dairy, Inc. v. Maplehurst Farms, Inc.*,
    No. 88-cv-4857, 1989 WL 2078 (N.D. Ill. Jan. 10, 1989) ...................................... 10

*Offshore Exploration and Production LLC v. Morgan Stanley Private Bank, N.A.*,
    986 F. Supp. 2d 308 (S.D.N.Y. 2013) ................................................................. 11

*Ohio Sec. Ins. Co. v. Kinsale Ins. Co.*,
    No. 24-cv-149 (PKC), 2024 WL 41135737 (S.D.N.Y. Dec. 17, 2024) .................... 17

*Patten Sec. Corp. v. Diamond Greyhound & Genetics, Inc.*,
    819 F.2d 400 (3d Cir. 1987) ............................................................................. 10

*PB Life and Annuity Co. Ltd. v. Universal Life Ins. Co.*,
    No. 20-cv-2284 (LJL), 2020 WL 2476170 (S.D.N.Y. May 12, 2020) .................... 15

*Pers. Sec. & Safety Sys. Inc. v. Motorola Inc.*,
    297 F.3d 388 (5th Cir. 2002) ............................................................................. 14

*Sanchez v. General Electric Co.*
    196 F. Supp. 3d 726 (S.D. Tex. 2016) ................................................................ 14

*Sec. Plans, Inc. v. CUNA Mut. Ins. Soc.*,
    769 F.3d 807 (2d Cir. 2014)...................................................................................16

*Shafer v. Stanley*,
    No. 20-cv-11047 (PPG), 2023 WL 8100717 (S.D.N.Y. Nov. 21, 2023)................................11

*Shehadeh v. Horizon Pharma USA, Inc.*,
    No. 20-cv-8107 (AT), 2021 WL 4176254 (S.D.N.Y. Sept. 14, 2021) ............................12, 13

*Subsea Co. v. Payan*,
    448 S.W.3d 557 (Tex. App. 2014)........................................................................14

*Taylor Morrison of Tex., Inc. v. Ha*,
    660 S.W.3d 529 (Tex. 2023)..............................................................................16

*In re Weekley Homes, L.P.*,
    180 S.W.3d 127 (Tex. 2005)..............................................................................16

*WesternGeco, LLC v. Magseis FF LLC*,
    No. H-22-3080, 2025 WL 643069 (S.D. Tex. Feb. 27, 2025)..................................15

*Yorke v. TSE Group LLC*,
    No. 18-cv-5268 (JMF), 2019 WL 3219384 (S.D.N.Y. July 17, 2019)...........................1

**Statutes**

9 U.S.C. § 3...................................................................................................17

Defendant Crunch, LLC ("Crunch") respectfully submits this reply brief in support of its amended motion to compel arbitration and stay this proceeding pending resolution of the arbitration.

## **INTRODUCTION**

Plaintiff's Opposition to Defendant's Amended Motion to Compel Arbitration and Stay Proceedings (ECF No. 32) ("Opposition" or "Opp'n") does not deny that the Crunch membership agreement Plaintiff agreed to includes a broad Arbitration Agreement[1] requiring her to individually arbitrate any dispute with Crunch. *See* Mem. at 2-4 (outlining the Arbitration Agreement). Plaintiff also does not dispute that she agreed to delegate any dispute regarding the scope or validity of her Arbitration Agreement to an arbitrator. *See id.* Instead, Plaintiff's Opposition proceeds along a false premise, claiming that Plaintiff reviewed and agreed to a separate set of terms when she added the Crunch+ service to her membership (the "Crunch+ Terms & Conditions"). Plaintiff—actually her counsel—says Plaintiff entered into a separate clickwrap agreement accepting these terms "during the sign-up flow for the Crunch+ streaming service," and that they supersede and nullify her Arbitration Agreement. *See* Opp'n at 1-2. This is wrong for two reasons.

First, Plaintiff never entered into this clickwrap agreement. The sign-up flow that the Opposition and the supporting declaration of counsel describes was for new customers of Crunch who do not have existing Crunch member accounts. *See* Declaration of Chad Waetzig at ¶¶ 4-5 (filed contemporaneously hereto ("Reply Decl.")).[2] The sign-up flow for Website visitors with an

---

[1] Capitalized terms not defined herein have the meaning provided in Crunch's Memorandum of Law in Support of its Amended Motion to Compel Arbitration ("Mem."), ECF No. 31.

[2] Parties may introduce new evidence in their replies to "properly address new material issues raised in the opposition papers so as to avoid giving unfair advantage to the answering party." *Bayway Refining Co. v. Oxygenated Marketing and Trading A.G.*, 215 F.3d 219, 226-27 (2d Cir. 2000); *Yorke v. TSE Group LLC*, No. 18-cv-5268 (JMF), 2019 WL

existing Crunch member account, like Plaintiff, did not include the "click-wrap agreement" described in the Opposition, *see* Opp'n at 7-9, and did not require the Website visitor to review or agree to the separate Crunch+ Terms and Conditions. *See* Reply Decl. ¶¶ 5-8. Plaintiff does not and cannot provide any evidence that she was ever presented with or agreed to these separate terms. Moreover, the entire basis for her addition of the Crunch+ service was that, by using her existing Crunch member account, she could sign up for Crunch+ at a lower subscription price. Mem. at 3. Thus, there is no evidence that Plaintiff entered into a new agreement separate from her membership agreement, and no basis for Plaintiff to avoid her Arbitration Agreement.

Second, the Opposition improperly asks the Court to find that the Crunch+ Terms & Conditions, even if they were in effect, "expressly supersede[]" any prior agreements, like her Crunch membership agreement. Opp'n at 2. This attempt to challenge the scope of the Crunch membership agreement should be rejected because that question, under the delegation clause in the Arbitration Agreement, must be resolved by the arbitrator.

Plaintiff argues that, under *Coinbase, Inc. v. Suski*, 602 U.S. 143, 145 (2024), the Court (not the arbitrator) must resolve this issue, but this case is nothing like *Suski*. In that case, a subsequent contract expressly placed disputes of the type at issue before the court, stating that the court had "sole jurisdiction of any controversies" relating to the sweepstakes promotion. *See id.* at 147. The second contract thus created a direct conflict with the earlier contract's arbitration clause. Here, to the contrary, the Crunch+ Terms & Conditions state only that they supersede prior agreements "concerning the ***subject matter***" of those terms, i.e., what is discussed within the four corners of those terms. ECF No 32-2 at 17. But the membership agreement between Plaintiff and her Crunch franchise (which, she does not dispute, is enforceable by Crunch here) is between

---

3219384, at *2 (S.D.N.Y. July 17, 2019) ("To the extent that the new evidence submitted in reply . . . filed as exhibits to the affidavit — respond directly to Yorke's argument, it is entirely appropriate to consider them.").

different parties and has a different scope and subject matter. That agreement (and the Arbitration Agreement within it) is not discussed anywhere in the Crunch+ Terms and Conditions, which were only presented to ***new*** Crunch+ subscribers who did not have existing Crunch member accounts. Thus, the terms of these separate agreements do not—and logically, cannot—supersede the agreements entered into between those with existing Crunch member accounts and their franchises. Thus, unlike in *Suski*, there is no "conflict" for the Court to resolve, and Plaintiff's scope-based arguments must be resolved in individual arbitration.

Regardless of whether the issue is for this Court or an arbitrator to decide, what Plaintiff characterizes as a "superseding mandatory forum selection" clause is actually far more limited: it simply states that an "***action***" (i.e., a lawsuit) between the parties "must be ***commenced*** in the state or federal courts located in New York County, New York." *Id.* (emphasis added). In other words, the clause simply defines where a judicial action or lawsuit must ***begin*** (i.e., "commence"). Courts around the country have held that forum selection clauses using "commence" language do not prevent the dispute from subsequent resolution in a different forum, especially where, as here, one of the parties has an arbitration right it is contractually entitled to invoke. And because the Crunch+ Terms and Conditions are limited to "actions," i.e., lawsuits, they do not displace the broader language in the Arbitration Agreement covering ***any*** dispute (like an arbitration, which is a proceeding as opposed to a judicial action) with a Crunch franchise or Crunch that cannot be informally resolved. Opp. at 4. It is well settled that a subsequent agreement with a merger clause supersedes a prior agreement only to the extent that the agreements conflict—here, there is no conflict between a forum selection clause that requires any lawsuit (*e.g.*, one to compel arbitration) to begin in New York and an Arbitration Agreement that requires disputes to be resolved in individual arbitration.

Accordingly, and for the reasons set forth below, Crunch's Motion should be granted.

**ARGUMENT**

**I.    PLAINTIFF'S OPPOSITION DOES NOT SET FORTH ANY EVIDENCE DISPUTING THAT SHE ENTERED INTO AN ARBITRATION AGREEMENT WITH CRUNCH.**

Crunch's Motion established that Plaintiff agreed to an Arbitration Agreement that broadly governs any disputes with Crunch and delegates disputes regarding arbitrability to the arbitrator. Mem. at 2-4. Plaintiff does not dispute that she entered into the Arbitration Agreement and concedes that it includes a delegation clause that governs any questions regarding the arbitrability of her dispute. Instead, Plaintiff incorrectly claims the Arbitration Agreement was superseded when she supposedly entered into a separate "clickwrap" agreement when she joined Crunch+.

As discussed below, an argument challenging arbitrability must be resolved in arbitration under the delegation clause in the parties' Arbitration Agreement and would, in any event, fail on the text of the two agreements even if it were not delegated. *See infra* § II. But this Court need not reach either of those issues because the "clickwrap" agreement the Opposition invokes was not entered into by the parties. As such, Plaintiff's argument fails factually at the threshold.

First, there is no admissible evidence that the parties entered the "clickwrap" agreement the Opposition newly invokes. The Opposition is supported only by an attorney declaration—not any evidence from Plaintiff—of what *the attorney* purportedly saw when he visited the Website around the time that she did. This purported testimony should be rejected: facts must be based on personal knowledge, and the attorney has no basis (and does not provide any) to offer testimony on the subject at issue, namely what ***Plaintiff*** saw or agreed to when she visited the Website. *See, e.g.*, *Generali Espana de Seguros y Reaseguros, S.A. v. Speedier Shipping, Inc.*, No. 22-1150, 2023 WL 3362839, at *2 (2d Cir. May 11, 2023) ("Speedier Shipping's attorney declaration is without foundation, as Mr. Ripa provides no indication that he possesses personal knowledge of his client's

affairs to corroborate the representations therein.").[3]

Second, even if an attorney declaration could provide evidence of a party's assent to contractual terms, the clickwrap agreement the attorney claims he saw when visiting the Website is irrelevant to Plaintiff's case.[4] He, unlike Plaintiff, does not have an existing Crunch member account. A Website visitor with an existing Crunch member account, when adding Crunch+ to that account at the time Plaintiff joined Crunch+, was not presented with nor asked to agree to the Crunch+ Terms and Conditions. *See* Reply Decl. ¶¶ 4-5. Instead, Plaintiff, when seeking to add Crunch+ to her existing Crunch member account (at a lower subscription rate), was simply required to confirm her existing Crunch member account on the Website, after which she could add the Crunch+ service without being presented with any new or different terms of service than that of her existing Crunch member account. *Id.* ¶ 4-8. Based on personal knowledge of a declarant, here's what *actually* happened:

The first screenshot Plaintiff saw when adding the Crunch+ service on the Website simply required her to log in with her existing Crunch credentials, which she did:

---

[3] *Merrill Lynch, Pierce Fenner & Smith Inc. v. Sohmer*, No. 16-cv-1856 (MKB), 2019 WL 1441126, at *9 n.19 (E.D.N.Y. Mar. 29, 2019) ("Although an attorney's affidavit can be used, in connection with a summary judgment motion, to place documents produced in discovery before the court, an attorney's declaration containing factual allegations not based on personal knowledge does not carry any weight, *see Smeraldo v. City of Jamestown*, 512 F. App'x 32, 34 (2d Cir. 2013) (finding that a court may decline to consider aspects of an attorney's affidavit not based on personal knowledge); *Patterson v. County of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004) (holding that inadmissible statements in affidavits submitted in support of summary judgment motion are incapable of raising material issues of fact). The Court therefore considers only those sections of his declaration that introduce attached exhibits.") (cleaned up). *See also Fantasia Distribution Inc. v. Magellan Tech. Inc*., No. 20-cv-4340 (KAM) (VMS), 2023 WL 2614209, at *1 (E.D.N.Y. Mar. 23, 2023) ("because Plaintiff provided no documentary evidence to establish damages other than Plaintiff's counsel's affidavit, which was not based on personal knowledge—this Court concludes that Plaintiff has failed to prove the alleged damages to a "reasonable certainty.").

[4] The attorney declaration—beyond being an improper basis for showing contract formation by one's client and misapprehending when the clickwrap agreement applies—is suspect generally. The attorneys have sued Crunch (or its affiliates) in at least five other putative class actions in the last few years. *See, e.g., Pania v. Crunch Holdings, LLC*, Case No. 1:24-cv-07127 (S.D.N.Y. filed Sept. 19, 2024); *Adkins v. Crunch Fitness Int'l, Inc.* 2023-2890 (D. Okla. Filed May 22, 2023); *Grant v. Crunch Gym, LLC*, Case No. 1:23-cv-02870 (S.D.N.Y. Apr. 9, 2023); *Wakefield v. Crunch Gym LLC*, Case No. 1:23-cv-00389 (S.D.N.Y. filed Jan. 19, 2023). Here, the declaration says that the Website was checked on the same day that Plaintiff signed up for Crunch+. ECF No. 32-3. Plaintiff and her attorney, in other words, visited the Website on the same day, days before she filed this lawsuit. And after she signed up and then filed the lawsuit, she never paid—payment was blocked after the lawsuit was filed. Reply Decl. ¶ 9.



*See* Reply Decl. ¶ 6.

After logging in with those credentials, she was then asked to provide payment information, which she did before blocking payment after the lawsuit was filed:



*See* Reply Decl. ¶ 7. At no point during this process did Plaintiff see—let alone agree to—a

"clickwrap agreement requiring her to consent to the Crunch+ Terms & Conditions," as her lawyer—a non-Crunch member—claimed after the fact based on his own distinct and inapposite personal experience. *See* Opp'n at 8-9.

Stated simply, the Opposition presents no evidence that Plaintiff ever agreed to the Crunch+ Terms and Conditions. Because the Opposition otherwise does not dispute that Plaintiff *did* agree to the Arbitration Agreement, Crunch's Motion should be granted, and this dispute should be sent to arbitration.

## II.    EVEN IF THE CRUNCH+ TERMS AND CONDITIONS WERE APPLICABLE HERE, THE OPPOSITION FAILS TO SHOW THAT THEY SUPERSEDE THE ARBITRATION AGREEMENT.

Even assuming Plaintiff had assented to the "clickwrap" agreement (which she did not), Plaintiff's argument that the Crunch+ Terms and Conditions govern this dispute and supersede her Arbitration Agreement fails for multiple reasons.

As an initial and further dispositive matter, her argument is an attack on arbitrability that the parties agreed must be delegated to the arbitrator. Plaintiff argues that, under *Suski*, the Court must resolve this dispute because, she claims, the question of which contract governs this dispute is a "non-delegable threshold question for the court." Opp'n at 4. But *Suski* does not say that. Instead, it holds that it is only when there is a conflict between two contracts on the specific question of "*who decides arbitrability*" that the Court must resolve that issue. 602 U.S. at 149-50 (emphasis added). There, the Court found that, in a dispute involving a Coinbase sweepstakes promotion, there was a facial conflict between the delegation clause in the plaintiff's user agreement, and the exclusive jurisdiction language in the sweepstakes promotion which stated that California courts "shall have *sole jurisdiction* of *any* controversies" regarding the promotion. *Id.* at 146 (emphasis added). No such conflict exists here where nothing in the Crunch+ Terms and Conditions provide *sole* jurisdiction of controversies relating to that service—especially, for the

reasons set forth above, as to those with existing Crunch member accounts. Thus, Plaintiff's manufactured conflict is, at most, a conflict about scope, not a conflict about who decides arbitrability. *Suski*, therefore, does not apply to the facts at hand.

Regardless, Plaintiff's supersession argument regarding the Crunch+ Terms and Conditions misstates that agreement and misunderstands settled law, as detailed in the three subsections that follow. Briefly summarized: First, what Plaintiff claims is some sort of global dispute resolution provision in the Crunch+ Terms and Conditions is nothing of the sort. To the contrary, that provision terms simply states that an ***action*** has to start, or ***commence***, in New York, and that the parties consent to jurisdiction when it commences. It says nothing about whether a judicial action has to stay there, or whether it has to be resolved by that court. Instead, the provision leaves it up to the parties whether they then want to resolve the action in some other forum. Second, Plaintiff's argument that the merger clause in the Crunch+ Terms and Conditions erases or somehow nullifies the Arbitration Agreement is wholly contrary to settled principles of contract law, which consistently limit the effect of a merger clause to instances where the subsequent subject matter clearly conflicts with the prior subject matter. That is not the case here, where the forum provision can be read consistently with and alongside the Arbitration Agreement. Third, Plaintiff's half-baked estoppel argument fails under Plaintiff's own case law. If anything, ordinary estoppel principles dictate that Plaintiff, by taking advantage of her Crunch member account to lower her subscription price for Crunch+, should not be permitted to avoid the terms she assented to in that very same agreement.

### A.    Nothing in the Crunch+ Terms and Conditions alters or impacts the Arbitration Agreement.

Plaintiff's Opposition claims that the forum provision in the Crunch+ Terms and Conditions is a "mandatory forum selection clause" that somehow precludes enforcement of the

Arbitration Agreement. Opp'n at 12-14. But unlike the agreements in the cases cited by Plaintiff—which mandate the resolution of all "***proceedings***" in a court or otherwise provide the court with "***sole jurisdiction***" over all actions and proceedings on a specific subject matter—the forum provision does not dictate where an action must be resolved or somehow suggest that a court has the exclusive power to resolve all disputes between the parties. In two principal ways, the provision here is substantially narrower than any of those at issue in the cases cited by Plaintiff.

First, the provision is limited only to "actions," not "all actions and proceedings" or all "disputes" of any type. Plaintiff's Opposition relies heavily on *Goldman, Sachs & Co. v. Golden Empire Sch. Fin. Auth.*, but the Second Circuit there explained that arbitrations, unlike lawsuits, are regularly described as "proceedings," not actions. 764 F.3d 210, 212 (2d Cir. 2014) ("[a]rbitrations are regularly described as 'proceedings' by the United States Supreme Court, [the] Circuit, [and] New York state courts . . . ."). Likewise, in *Applied Energetics, Inc. v. NewOak Cap. Markets, LLC*, another case relied on by Plaintiff, the Second Circuit found that a forum selection clause governing "any ***dispute***" between the parties "plainly preclude[d] arbitration," because the word "***dispute***" was similarly "all-inclusive" and "mandatory." 645 F.3d 522, 525 (2d Cir. 2011) (emphasis added). The forum provision here is much narrower—covering only judicial ***actions***, i.e., lawsuits, and not arbitration proceedings or disputes of all types. *See id.*; *see also Citigroup Glob. Markets Inc. v. All Children's Hosp., Inc.*, 5 F. Supp. 3d 537, 540 (S.D.N.Y. 2014) (acknowledging that "courts from New York courts to the U.S. Supreme Court routinely refer to arbitrations as 'proceedings'").

Second, the provision here, unlike that in *Suski*, does not provide exclusive or sole jurisdiction for disputes in a specific court, but instead merely states where a lawsuit "must be ***commenced***." *See* ECF No. 32-2 at 17 (emphasis added). Courts have consistently found that

forum selection language stipulating where an action must "commence" simply indicates where that action must "begin" or "start." *See Aspen American Ins. Co. v. Blackbaud, Inc*., 624 F. Supp. 3d 982 , 992 (N.D. Ind. 2022) ("The word 'commence' in this clause means to 'begin' or 'start.'") (quoting OXFORD DICTIONARIES, https://premium.oxforddictionaries.com/); *EBI-Detroit, Inc. v. City of Detroit*, 279 F. App'x 340, 346 (6th Cir. 2008) (forum selection clause stating where actions "commence" does not preclude removal or transfer because it relates only to the "commencement" of the lawsuit); *see also Oberweis Dairy, Inc. v. Maplehurst Farms, Inc*., No. 88-cv-4857, 1989 WL 2078, at *2 (N.D. Ill. Jan. 10, 1989) (same for "institute"). Under the "plain meaning" of "commence," the provision simply means that if either contracting party to the terms decide to file an "action," they must do so where they agreed. This would apply, for example, in an action to compel arbitration, or in an action to recognize and enforce an arbitration award. Nothing about the language would mean, however, that a party, by agreeing on where to start an action, is waiving its right to then have the case moved to an agreed forum. *See Cruthis v. Metropolitan Life Ins. Co.*, 356 F.3d 816, 819 (7th Cir. 2004) ("[T]he right to file suit in a particular forum is not equivalent to the right to avoid removal from that forum.").

That is equally true with respect to the consent to jurisdiction language: agreeing to the jurisdiction of a particular court when an action commences means only that a party accepts that forum if a lawsuit is filed, not that it has surrendered its right to arbitrate. As the Third Circuit has explained, a forum clause that "merely states the agreement of both parties to accept the maintenance of personal jurisdiction" in a chosen court if one party "bring[s] suit" cannot be read as a surrender of the "contractual remedy of arbitration" absent any mention of arbitration. *Patten Sec. Corp. v. Diamond Greyhound & Genetics, Inc.*, 819 F.2d 400, 407 (3d Cir. 1987).

Accordingly, nothing in the "Disputes" provision—even if it did apply here—would displace or somehow conflict with Plaintiff's Arbitration Agreement.

Thus, even if *Suski* did require the Court to consider the Crunch+ Terms and Conditions, nothing in those terms conflicts with or purports to displace the obligations between Crunch and Plaintiff in her membership agreement. *See Shafer v. Stanley*, No. 20-cv-11047 (PPG), 2023 WL 8100717, at *12 (S.D.N.Y. Nov. 21, 2023) ("where an agreement containing an exclusive jurisdiction provision overlaps with – but does not entirely displace – a related agreement containing an arbitration provision, the issue of which provision applies presents a question of scope, and is thus subject to language in an arbitration provision delegating disputes about arbitrability to an arbitrator"). And even under Plaintiff's reading of *Suski*, there must be an actual conflict between the contracts for the Court to resolve. But that is not the situation here, where there is no conflict between the "commence" obligation for "actions" in the Crunch+ Terms and Conditions and the Arbitration Agreement.

Accordingly, the Motion should be granted. *See id.* (compelling arbitration); *see also Offshore Exploration and Production LLC v. Morgan Stanley Private Bank, N.A.*, 986 F. Supp. 2d 308, 320 (S.D.N.Y. 2013) ("Because Offshore has not demonstrated that its claim arises exclusively under the Escrow Agreement and the Purchasers have demonstrated that the present action implicates several clauses of the Stock Purchase Agreement, the parties' intent to delegate to the arbitration panel issues of arbitrability is clear and this proceeding must be stayed or dismissed pending a decision by the arbitration panel.").

**B.**    **Plaintiff's argument that a subsequent agreement containing a merger clause automatically supersedes a prior agreement to arbitrate should be rejected.**

Relying again on the Second Circuit's decision in *Goldman, Sachs v. Golden Empire*, 764 F.3d at 212, Plaintiff argues that, because the Crunch+ Terms and Conditions contain a merger

clause and what Plaintiff calls a "mandatory forum selection clause," the Court must find that the Arbitration Agreement was superseded. Opp'n at 12-13. This is wrong factually, for the reasons outlined above, and wrong legally, for the reasons that follow.

First, *Goldman* stands only for the proposition that where a subsequent agreement contains an "all-inclusive" forum selection that cannot be read consistently with a preexisting arbitration obligation—and *Goldman*'s arbitration obligation arose under the FINRA rules, not (like here) an existing contract between the parties—that earlier clause is superseded. 764 F.3d at 214. But as previously discussed, *supra* p. 9, the later contract at issue in *Goldman* broadly required that "***all actions and proceedings***" arising from that agreement be brought in a New York court. *See id.* at 215. The Second Circuit focused on the fact that "[a]rbitrations are regularly described as 'proceedings'" to conclude that the later contract superseded the earlier agreement to arbitrate. *Id.* Here, the later provision does not cover all ***proceedings***—only "actions"—nor does it govern where they must be resolved—only where they must "commence."

Second, courts applying *Goldman* have consistently "agreed that general merger clauses stating that the later contract supersedes all prior agreements only supersede an earlier contract to the extent that the agreements conflict." *Shehadeh v. Horizon Pharma USA, Inc.*, No. 20-cv-8107 (AT), 2021 WL 4176254, at *2 (S.D.N.Y. Sept. 14, 2021). Thus, when considering the supersession of arbitration agreements specifically, "'courts in the Second Circuit look to whether the subsequent agreement 'specifically preclude[s]' or provides 'positive assurance' that a dispute is no longer subject to arbitration.'" *Id.* at *2 (quoting *Goldman, Sachs & Co. v. Golden Empire Schs. Fin. Auth.*, 922 F. Supp. 2d 435, 440 (S.D.N.Y. 2013), *aff'd*, 764 F.3d 210 (2d Cir. 2014)). Here, for reasons already discussed, there is no conflict between the forum provision and the Crunch membership agreement. They were executed between different parties and cover different

subsequent matters. Moreover, the forum provision does not purport to preclude arbitration or "provide positive assurance" that any particular dispute is no longer subject to arbitration. Neither *Goldman* nor any of the other cases cited by Plaintiff suggest that a Court can find supersession of an arbitration agreement in such circumstances. *See Shehadeh*, 2021 WL 4176254, at *3 (when parties enter into subsequent agreements "covering the same general subject matter" but with terms that are not entirely coextensive, or "[w]here there is variance in the terms of the two agreements, the earlier terms survive to the extent that they remain uncontradicted by the terms of the subsequent agreement") (internal quotations and citation omitted).

Finally, Plaintiff argues that the Court should independently find supersession based on the merger clause analysis offered in *Dewitt*, which states that "[w]hen determining if a particular provision is superseded by a provision in a subsequent contract, courts look to '(1) whether there is an integration and merger clause that explicitly indicates that the prior provision is superseded; (2) whether the two provisions have the same general purpose or address the same general rights; and (3) whether the two provisions can coexist or work in tandem.'" *Dewitt Stern Grp., Inc. v. Eisenberg*, 257 F. Supp. 3d 542, 581–82 (S.D.N.Y. 2017) (quoting *Long Side Ventures, LLC v. Adarna Energy Corp.*, No. 12-cv-6836 (LTS) (MHD), 2014 WL 4746026, at *6 (S.D.N.Y. Sept. 24, 2014)). But in *Dewitt*, the two contracts were in essence the same contracts entered into at different times (both were employment agreements). The two contracts covered the same subject matter, and contained each of the same terms. 257 F. Supp. 3d at 582.

Here, although Plaintiff characterizes the merger clause in the Crunch+ Terms and Conditions as a general merger clause extinguishing prior agreements, Opp'n at 14-16, the case law makes clear that it is in fact a limited clause which states that its terms are the entire understanding "concerning ***the subject matter hereof*** and supersed[ing] all prior agreements and

understandings *regarding the same*." ECF No. 32-2 at 17 (emphasis added). It does not, as described in *Dewitt*, explicitly indicate that the prior provision is superseded; to the contrary, it expressly states that it applies only where the later terms covered the same subject matter as an earlier agreement, and cannot co-exist or be read in tandem with the earlier terms. By contrast, in the cases cited by Plaintiff, the merger language clearly negated prior agreements, in one case stating "'there are no agreements or understandings with respect to the subject matter hereof' and specifically identif[ying] the agreements that were in force" at the time. *See Applied Energetics*, 645 F.3d at 525 n.2 (finding that this language went "beyond" a "general merger provision").[5] Nothing like that exists here. In cases involving more limited merger language, like this one, courts have made clear that the language is simply intended to "ensur[e] that the parol evidence is observed." *Aviation Fin. Co. Ltd. v. Chaput*, No. 14-cv-8313 (CM), 2015 WL 13203653, at *8 (S.D.N.Y. Mar. 12, 2015). Under Plaintiff's impermissibly broad reading, the merger clause would essentially extinguish the membership agreement itself, which clearly cannot be the case. *See id.*("such a boilerplate [merger] clause cannot be read literally, because doing so would revoke the very Engagement Letter on which [the latter agreement] is based").

Moreover, *Dewitt* makes clear that there is no basis to find supersession where, as here, the

---

[5] Plaintiff cites to Fifth Circuit cases, but courts in the Fifth Circuit have noted that they apply a similar analysis to the Second Circuit analysis, finding that under Second and Fifth Circuit law, "[b]efore a forum selection provision will be held to destroy an arbitration provision, it must specifically reference that arbitration provision as subject to elimination." *Sanchez v. General Electric Co.* 196 F. Supp. 3d 726, 731 (S.D. Tex. 2016). The *Hanson* case cited by Plaintiff does not suggest otherwise—there, the earlier agreement did not contain a standalone arbitration clause, and the later agreement contained a far broader merger clause that extinguished all prior agreements, "express or implied," relating to the plaintiff's employment. *Hanson Bldg. Materials Am., Inc. v. Pennington*, 176 F. App'x 577, 579 (5th Cir. 2006). By contrast, in *Pers. Sec. & Safety Sys. Inc. v. Motorola Inc.*, 297 F.3d 388, 396 (5th Cir. 2002), which involved a more analogous set of facts, the Fifth Circuit reversed a ruling denying a motion to compel arbitration after finding that the later forum selection clause *did not cover "'disputes' or all 'claims' like the arbitration provision* in the Product Development Agreement, the forum selection clause confers 'exclusive jurisdiction' on Texas courts only with respect to 'any suit or proceeding.' This limitation suggests that the parties intended the clause to apply *only in the event of a non-arbitrable dispute* that must be litigated in court." (Emphasis added.) Texas courts rule similarly. *Subsea Co. v. Payan,* 448 S.W.3d 557, 560 (Tex. App. 2014) (because nothing in later contract conflicted with earlier contract's arbitration clause, the arbitration clause was enforceable, as "[t]he portion of the earlier contract not in conflict with the later contract remains enforceable").

two provisions relate to different parties and clearly, as discussed *supra*, can be read in tandem. Unlike the cases discussed by Plaintiff which involve the same parties and subsequent agreements covering the same matters covered in prior ones, *see Eisen v. Venulum Ltd.*, 244 F. Supp. 3d 324 (W.D.N.Y. 2017) (three investment agreements entered into at different times), the forum provision, which covers only "actions" and governs only they must "commerce," does not contemplate or purport to replace the Arbitration Agreement or the arbitration proceedings agreed to by the parties.[6] *Cf. Goldman*, 764 F.3d at 214 (later agreement covered "all actions ***and proceedings***" between the parties, and thus necessarily covered arbitration proceedings) (emphasis added); *Mobile Real Estate, LLC v. NewPoint Media Group, LLC*, 460 F. Supp. 3d 457, 474 (S.D.N.Y. 2020) (notwithstanding "mandatory" and "exclusive" language in Second Services Agreement, "the Second Services Agreement is not so broad as to completely preclude and supersede the First Services Agreement, particularly because the Agreements cover different subject matter"); *PB Life and Annuity Co. Ltd. v. Universal Life Ins. Co.*, No. 20-cv-2284 (LJL), 2020 WL 2476170, at *9 (S.D.N.Y. May 12, 2020) ("there is ample room for the operation of the forum selection clause in the many disputes that would not rest on or come within the scope of the Reinsurance Agreement['s] arbitration clause").

### C.    Plaintiff's estoppel argument should be rejected.

Plaintiff's final argument tries to turn estoppel principles on their head, claiming that it

---

[6] Plaintiff's other cited cases are similarly inapposite. In *WesternGeco, LLC v. Magseis FF LLC*, No. H-22-3080, 2025 WL 643069 (S.D. Tex. Feb. 27, 2025), the forum selection clause was both exclusive and outcome-determinative, requiring that "[a]ny claim to interpret or enforce th[e] Agreement . . . be tried by bench trial"—language that clearly foreclosed arbitration. No comparable language appears here. Similarly, *O'Shaughnessy v. Young Living Essential Oils, LC*, 810 F. App'x 308 (5th Cir. 2020) turned on the absence of mutual assent under Utah law, as the arbitration clause was merely incorporated by reference and never signed by Plaintiff. That court emphasized that the forum clause was drafted without carveouts for arbitration despite the drafting party having done so elsewhere throughout the agreement. And *CreditSights, Inc. v. Ciasullo*, No. 05-cv-9345 (DAB), 2007 WL 943352, at *6 (S.D.N.Y. Mar. 29, 2007), cited by Plaintiff, actually supports Crunch's position—there, the Court refused to find supersession in that case, holding that a subsequent contract not pertaining to "precisely the same subject matter" does not supersede an earlier contract without "definitive language indicating it revokes, cancels, or supersedes that specific prior contract." *Id*.

would somehow be unfair if she could not escape her Arbitration Agreement by relying on a separate set of terms that she never agreed to. Estoppel principles actually dictate the opposite result: because Plaintiff agreed to the Arbitration Agreement as part of her Crunch membership, and then used the benefits of that membership to get a lowered subscription price when adding the Crunch+ service—thus relying on the benefits of that Crunch membership to use Crunch+— she cannot avoid the obligations that membership agreement. *See Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S.*, 9 F.3d 1060, 1064 (2d Cir. 1993) (plaintiff was estopped from accepting benefits of an agreement but then denying applicability of the arbitration clause).[7]

The single case discussed in the Opposition, a 2008 Maryland case decided under Mississippi law, is not to the contrary. In that case, the defendant had repeatedly represented to the plaintiff that an updated version of the user agreement "was the applicable user agreement for all users," and had done so "well into th[e] litigation." *Harold H. Huggins Realty, Inc. v. FNC, Inc*., 575 F. Supp. 2d 696, 711 (D. Md. 2008). It was only in the middle of the litigation that the defendant claimed that its 2005 updated agreement was not applicable. *Id.* at 703. The court thus held that the defendant was estopped from denying its prior representations mid-litigation, and had in any event waived its arbitration rights. *Id*. at 712-13.[8]

---

[7] As explained in the Motion, *see* Mem. at 5 n.6, the parties' membership agreement also contains a choice of law provision for Texas law. Texas law is in accord here. *See Taylor Morrison of Tex., Inc. v. Ha,* 660 S.W.3d 529, 533 (Tex. 2023) ("[l]itigants who seek direct benefits from a contract subject themselves to its terms, including any arbitration clause within that contract"); *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 134 (Tex. 2005) (where "Von Bargen deliberately sought substantial and direct benefits from the contract, and Weekley agreed to comply, equity prevents her from avoiding the arbitration clause that was part of that agreement").

[8] The Second Circuit case cited by Plaintiff, *Sec. Plans, Inc. v. CUNA Mut. Ins. Soc*., 769 F.3d 807, 816 (2d Cir. 2014), *see* Opp'n at 17-18, supports Crunch's position. In that case, the Second Circuit refused to allow the party to invoke principles of judicial estoppel where they could not show they "reasonably relied" on a different contract that stood against the contract at issue. Here, similarly, Plaintiff provides no evidence that she reasonably relied on the Crunch+ terms that she now suddenly seeks to invoke simply to avoid arbitration. Unlike in the cases cited, Plaintiff provides no evidence to support the assertion that she agreed the separate set of terms. The other case Plaintiff mentions, *HSBC Bank USA, Nat. Ass'n v. Adelphia Comm'ns Corp.*, No. 07-cv-553A, 2009 WL 385474, at *18 (W.D.N.Y. Feb. 12, 2009), is wholly inapposite. There, the court found that estoppel applied where the party, even though it was on notice of potential avoidance claims at the time of a sales hearing bankruptcy court, did not raise those claims at the time.

Plaintiff here does not and cannot point to any representations Crunch has made to the Court or Plaintiff regarding the purported applicability of the Crunch+ Terms and Conditions. To the contrary, as Plaintiff points out repeatedly, *see* Opp'n at 2-4, 7-8, those terms are not referenced in Crunch's Motion because Plaintiff never agreed to them and those terms were not included in Plaintiff's decision to supplement her existing Crunch member account with the separate Crunch+ service. Thus, the single case Plaintiff cites applying Mississippi quasi-estoppel principles has no application here. Accordingly, estoppel principles dictate that Plaintiff, having not disputed that she entered into an enforceable Arbitration Agreement that otherwise governs this matter, cannot avoid that agreement by referencing extrinsic terms she was never asked to agree to, and which, in any event, do not displace or otherwise alter her contractual obligations under the Arbitration Agreement. *See Ohio Sec. Ins. Co. v. Kinsale Ins. Co.*, No. 24-cv-149 (PKC), 2024 WL 41135737, at *4-5 (S.D.N.Y. Dec. 17, 2024) (party estopped from avoiding arbitration agreement after "exploiting the contractual relationship").

## III.    THIS ACTION SHOULD BE STAYED PENDING ARBITRATION.

Because Plaintiff has failed to demonstrate any basis for avoiding the Arbitration Agreement, arbitration should be compelled, and the action should be stayed while Plaintiff's individual claims are arbitrated. 9 U.S.C. § 3.[9]

**<u>CONCLUSION</u>**

For the foregoing reasons, Crunch respectfully requests that the Court issue an order compelling arbitration and staying this proceeding pending resolution of the arbitration.

---

[9] Plaintiff notably does not argue, nor could she, that her class action waiver is superseded by the Crunch+ Terms and Conditions. Thus, Crunch reasserts its right to seek to have Plaintiff's class action allegations stricken and/or class certification denied based on her waiver of any purported right to file a putative class action.

By: *James R. Horner*
James R. Horner
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
Telephone:  (212) 839-5300
Facsimile:  (212) 839-5599
Email: james.horner@sidley.com

Ian M. Ross (*pro hac vice*)
SIDLEY AUSTIN LLP
1001 Brickell Bay Drive
Miami, FL 33131
Telephone:  (305) 391-5100
Facsimile:  (305) 391-5101
Email: iross@sidley.com

*Counsel for Crunch, LLC*